## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Ronald D. Coleman (RC 3875)
Joel G. MacMull (JM 8239)
GOETZ FITZPATRICK LLP
One Penn Plaza—Suite 3100
New York, New York 10119
(212) 695-8100
rcoleman@goetzfitz.com
jmacmull@goetzfitz.com

Marc J. Randazza (MR 6762) – *Admitted in AZ, CA, FL, MA and NV Only*
Theresa Haar (TH 4373) – *Admitted in NY*
RANDAZZA LEGAL GROUP
3625 South Town Center Drive
Las Vegas, Nevada 89135
(702) 420-2001
mjr@randazza.com
tmh@randazza.com

*Attorneys for Plaintiff*
*Opinion Corp.*

| | |
|---|---|
| **OPINION CORP.,**<br><br>*Plaintiff,*<br><br>- *vs.* -<br><br>**ROCA LABS, INC.** *and* **ROCA LABS NUTRACEUTICALS USA, INC.**<br><br>*Defendants.* | CIVIL ACTION NO.<br>14-cv-6396 (LGS)<br>**AMENDED COMPLAINT** |

    Plaintiff Opinion Corp., by and through its undersigned attorneys, for its amended

complaint against the defendants named herein**,** alleges as follows:

## THE PARTIES

1.      Plaintiff Opinion Corp. is a New York limited liability company with a principal place of business in New York, New York.

2.      Defendant Roca Labs, Inc. ("Roca Labs") is a Florida corporation with its principal place of business in Sarasota, Florida.

3.      Defendant Roca Labs Nutraceuticals USA, Inc. ("RLN") is a Florida corporation with its principal place of business in Sarasota, Florida.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), 1367 and 2201, in that this case arises under the trademark laws and copyright laws of the United States, the Federal Declaratory Judgment Act and pursuant to the principles of supplemental jurisdiction.

5.      On information and belief, in engaging in the tortious conduct described below, the relationship of each of defendants Roca Labs and RLN was that of alter ego, controller, aider, abetter, joint venture, partner, agent, licensor or licensee with respect to the other.

6.      Personal jurisdiction over the defendants is vested in this Court because they are doing business in the State of New York or otherwise have engaged in acts and conduct purposefully directed towards plaintiff, a New York company whose principal place of business is in the State of New York.

7.      Personal jurisdiction over the defendants is further vested in this Court because they have purposely availed themselves of the privilege of doing business in New York by entering into multiple contracts with New York residents, selling a significant number of products in New York, and further by virtue of their efforts to enforce contracts against New

York residents; such contractual terms being unconscionable and sanctionable under New York law.

8.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1121 (b) and (c) because a substantial portion of the harm sought to be avoided, and substantial part of the events and omissions giving rise to the claims herein, have occurred, continue to occur and threaten to occur in this District.

## FACTS

9.      Plaintiff Opinion Corp. is the corporate owner of a website located at www.PissedConsumer.com.

10.      The PissedConsumer.com website is a consumer review site.

11.      In particular, PissedConsumer.com is an Internet forum that permits third party users ("users") to post comments and criticisms of businesses and individuals, which posts may be made anonymously, and which offers such businesses the opportunity to address such claims in a variety of productive ways.

12.      As such, PissedConsumer.com is an information service or system that provides or enables computer access by multiple users to a computer server.

13.      PissedConsumer.com does not, as a rule, edit, confirm or vet the content of users' posts for accuracy, or otherwise, subject to its terms of use.

14.      RLN describes itself, on its website, found at the URL www.rocalabs.com, as having "invented the Gastric Bypass Alternative®, strongest non-surgical weight loss in the world for the obese. The Formula procedure creates an immediate gastric bypass effect, leaving only 20% stomach space available for eating, practically forcing the user to eat only half and lose weight from day 1."

3

15.     RLN sells its "Gastric Bypass Alternative" (the "product") to buyers nationwide, including, upon information and belief, in the State of New York, through its website.

16.     The Better Business Bureau ("BBB") in West Florida ranks RLN as an "F," on a scale of A+ through F, in its business rating system.

17.     According to the BBB, the factors that lowered RLN's rating includes the fact that 73 complaints have been filed against it with the BBB; that RLN failed to respond at all to 14 of them; and that among those to which RLN did respond, two were not resolved.

18.     Of the 73 complaints filed with BBB in the last three years involving RLN, 44 of them, or 60% of these complaints relate to RLN's products or service.

19.     Moreover, according to the BBB website, "It has come to BBB's attention that the company will demand the removal of any complaint, web post or other publication that constitutes a breach of the terms and conditions agreed to by the consumer at the time of purchase, regardless of whether or not the consumer complaint is resolved."

20.     The "terms" referred to in the above statement were,  as stated on the RLN website, as follows:

> The price for The Formula and The Support is $1,580.00. The health application fee is $75.00; however this fee is waived upon purchase of the Formula. $17 is charged for verification purposes only, if approved the charge is deducted from the total payment. If not approved the $17 is immediately refunded back to the customer. If a customer decides to file any dispute with their credit card company for any charges made to the account the full $75 health application fee will be applied. You may purchase The Formula and The Support at full price and without condition, or you may elect to purchase The Formula at a special conditional rate ("Conditional Price"). We are providing this deeply discounted Conditional Price because The Company can better manage its risks and resources, and reduce The Company's legal expenses. In exchange for this Conditional Price, you explicitly agree to all of the following:
>
> . . .

(4) You agree that we can use any and all information relating to your success in The Company's marketing efforts. This can be done anonymously upon your written request.

(5) You agree that, regardless of your outcome, you WILL NOT speak, publish, print, blog or write negatively about The Product or The Company in any forum.

Any violation of this provision of the Agreement is deemed a material breach and you agree that The Company has no adequate remedy at law. You further consent to and agree to entry of an injunction by a Court of competent jurisdiction in enforcement of your violation of this term and condition.

(6) If you breach this Agreement, you agree to pay the full price for The Formula within 3 business days of demand, plus any expenses we incur in resolving the issue. In addition, we retain all legal rights and remedies against you for breach of contract and any other appropriate causes of action.

21.     Unsurprisingly, in view of the reputation of RLN as well as what appears to be dissatisfaction among its customers so widespread that RLN deems it necessary to impose "terms" purporting to impose a vow of silence on them, numerous dissatisfied customers have posted complaints on PissedConsumer.com.

22.     RLN has, in recent weeks and, upon information and relief, in connection with this litigation, made certain changes to the terms and conditions set forth on its website as well as in its formal ownership structure.

23.     The terms, however, are essentially the same, but now read as follows:

**Discounted Price:**  As detailed in our the Discount & Endorsement Policy section below, you may be given discounts in exchange for your agreement to endorse our products and share your weight loss success with the world.  You NEVER have to accept this option and can always pay the full undiscounted price for our products.  In agreeing to these discounts you are granting RLN the right to publish on our website(s) or on social media sites such as Facebook or Twitter your weight loss success and irrevocably waive your right to publish, make or promote any negative reviews about RLN, its products or employees. . . .

**Full Price:** The full price for your custom nutraceutical product and product support is $1,580.00. You may always purchase our product and support at full price and do not have to take advantage of this discount agreement.

**Discount & Endorsement Agreement:** In exchange for a discounted price on your custom order (a savings of at least $800.00), you agree to all of the following:

. . .

4) You agree that we can use any and all information that you provide about your weight loss success in RLN marketing efforts. This can be done with a screen name of your choice but with real pictures and video. You hereby irrevocably assign and grant RLN the right to use your likeness, weight loss story and any photographs or videos supplied to us in any and all marketing efforts including online marketing, electronic, television, print, radio, billboard, email and other forms of advertising.  This endorsement is granted in exchange for the discount provided at time of purchase and no payment from RLN to you for use of your likeness is owed or shall become due and payable. You hereby assign to RLN without compensation or further obligation, all rights now known or hereafter existing to use, allow others to use, or assign the right to use, to your weight loss story and any images and/or videos that you submitted to RLN. You further agree that your weight loss story and all materials provided to RLN may be used without restriction for any purpose whatsoever, commercial or otherwise, without compensation to you, including the right to use, reproduce, modify, adapt, publish, transmit, publicly perform or display, translate, create derivative works from, or otherwise communicate to the public your weight loss story on this website or elsewhere by us, our assigns or others we have allowed to use your story and materials. You will not assert any proprietary right or moral right of any kind with respect to any materials provided to us by you.

(5) You agree that regardless of your outcome, you will **not** disparage RLN and/or any of our employees, products or services.  This means that you will not speak, publish, cause to be published, print, tweet, review, blog or write negatively about RLN, or our products or employees in any way.  You further agree that in an effort to prevent the publishing of libelous or slanderous content in any form, your acceptance of this sales contract prohibits you from taking any action that negatively impacts RLN, its reputation, products, services, management or employees.

**The above paragraph does not apply to California residents or transactions that take place in California.**

Should you violate this provision, as determined by RLN in its sole discretion, you will be provided with seventy-two (72) hours to retract the content in question.  If the content remains, in whole or in part, you will immediately be billed $3,500.00 USD for legal fees and court costs until such complete costs are determined in litigation. Should these charges remain unpaid for 30 calendar days from the billing date, your unpaid invoice will be forwarded to our third party collection firm and will be reported to consumer credit reporting agencies until paid.  In addition, if requested by RLN, you agree to provide RLN with a

notarized affidavit that your disparaging remarks or review contained factually inaccurate material, was incorrect and breached this agreement.

**Any violation of this provision of the Agreement is deemed a material breach and you agree that The Company has no adequate remedy at law. You further consent to and agree to entry of an injunction by a Court of competent jurisdiction in enforcement of your violation of this term and condition.**

(6) If you breach this Agreement, as determined by RLN in its sole discretion, all discounts will be waived and you agree to pay the full price for your product within 3 business days of demand. In addition, we retain all legal rights and remedies against you for breach of contract and any other appropriate causes of action.

24.      Notwithstanding the foregoing, in a paragraph with the subheading, "Payment Problems" the new RLN terms and conditions state, "Other than the above listed allowance for attorney's fees relating to payment/collection issues, neither you nor RLN shall be entitled to attorney fees for other disputes between the parties," though elsewhere the RLN website terms and conditions state:

**Indemnification**

You agree to indemnify, hold harmless and, at RLN's option, defend it and RLN's affiliates, officers, directors, employees, stockholders, agents and representatives from any and all third party claims, liability, damages and/or costs (including, but not limited to, reasonable attorney's fees and expenses) arising from your improper or unauthorized use of this Website, our products, formula or support, your violation of this Agreement, or your infringement, or the infringement or use by any other user of your account, of any intellectual property or other right of any person or entity.

25.      On information and belief, citizens of the State of New York who have purchased RLN's product have posted their opinions concerning the product on PissedConsumer.com.

26.      On information and belief, citizens of the State of New York have sought consumer reviews of the product in order to make informed decisions as to purchasing or using the product.

27.     On information and belief, RLN has threatened New York citizens with lawsuits or charged numerous New York residents' credit cards in punitive amounts, purportedly based on its terms of purchase of its product.

28.     On information and belief, however, RLN's actual purpose in threatening litigation and placing punitive charges on credit cards of citizens of the State of New York has been, *inter alia*, to punish them for speaking negatively about its weight-loss product.

29.     Moreover, on information and belief, RLN's actual purpose in threatening litigation and placing punitive charges on credit cards of citizens of the State of New York has been, *inter alia*, to suppress their speech and deprive them from utilizing plaintiff's website lawfully to publish consumer reviews and to deprive other citizens of the State of New York of the ability to make fully informed decisions about purchasing the product.

30.     In a letter dated August 4, 2014, an individual representing himself to be counsel for Roca Labs contacted Opinion Corp. and demanded that it remove complaints on PissedConsumer.com relating to the product.

31.     The August 4, 2014 letter from Roca Labs explicitly threatened litigation against plaintiff, was purposely directed at plaintiff in New York and towards New York and had the intent and effect of chilling the First Amendment rights of plaintiff, a New York corporation, as well as those citizens of the State of New York who had posted complaints about the product on PissedConsumer.com or who may have contemplated doing so in the future.

32.     The August 4, 2014 placed plaintiff, a New York corporation, in reasonable apprehension of an immediate and imminent frivolous lawsuit by Roca Labs in Florida, which is an inconvenient forum for plaintiff.

33.     Opinion Corp. does not remove reviews from PissedConsumer.com unless they violate Opinion Corp.'s terms of service, and certainly does not do so based on threats of litigation by the subject of the review.

34.     Opinion Corp. will, however, remove a review upon receipt of an authenticated communication from the user who posted the review requesting removal.

35.     Opinion Corp.'s legal right to maintain this policy has been repeatedly vindicated by the courts despite a series of legal challenges by companies and individuals seeking to silence criticism through litigation.

36.     If Opinion Corp. were to remove reviews merely because the subjects of reviews threatened legal action, PissedConsumer.com would collapse as a source of consumer communication and information and as a business enterprise.

37.     Notwithstanding being apprised of these facts, by letter dated August 7, 2014, Roca Labs again wrote to Opinion Corp. insisting that it could "establish the knowing and intentional actions of Opinion" and that "Roca has suffered damages in excess of $40 million."

38.     Roca Labs' August 7, 2014 letter based this figure on its assertion that it was assured of "an average order in excess of $600" from each and every one of 71,000 reported readers of the negative reviews about Roca Labs on the PissedConsumer.com website.

39.     The August 7, 2014 letter accused Opinion Corp. of infringing trademarks claimed by Roca Labs (the "Roca Marks") as well as Roca Labs' copyright by virtue of the content posted on PissedConsumer.com.

40.     Roca Labs demanded that, in order to avoid litigation, Opinion Corp. remove all postings about Roca Labs from PissedConsumer.com, identify anonymous complainants and pay $100,000 to  Roca Labs "to cover past expenses and future monitoring."

41.     Plaintiff Opinion Corp. thereafter filed the original Complaint in this action seeking judicial determination and protection of its rights in view of the specific, credible and imminent litigation threat communicated to plaintiff by Roca Labs.

**<u>FIRST CAUSE OF ACTION</u>**
**Declaratory Judgment of Trademark Non-Infringement,**
**Non-Dilution and No Unfair Competition**

42.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

43.     Notwithstanding any trademarks found in content posted on PissedConsumer.com, plaintiff makes no use whatsoever of any of the alleged Roca Labs Marks as trademarks.

44.     Any use by plaintiff of the alleged Roca Labs Marks on PissedConsumer.com does not cause a likelihood of confusion and does not constitute infringement.

45.     Plaintiff's use of the alleged Roca Labs Marks is fair use and does not constitute infringement.

46.     Plaintiff's use of the alleged Roca Labs Marks does not damage Roca Labs and does not constitute infringement.

47.     By accusing plaintiff of federal and state trademark infringement, threatening imminent litigation regarding the same and demanding that to avoid litigation plaintiff eviscerate its business and pay Roca Labs an exorbitant sum, defendants have created a present and actual controversy between the parties.

48.     Roca Labs' actions have caused plaintiff to bring this action which is the only means for it to maintain its lawful activities.

49.     Plaintiff's remedy at law, in the event Roca Labs seeks to obtain a preliminary injunction, is not adequate to compensate it for the injuries threatened or inflicted by Roca Labs.

50.     Plaintiff requests that this Court declare and adjudicate the parties' respective rights and duties with respect to plaintiff's use of the trademarks owned, associated with, or allegedly owned by defendants.

### SECOND CAUSE OF ACTION
**Declaratory Judgment of
Copyright Non-Infringement**

51.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

52.     Plaintiff's use of content including material whose copyright is allegedly owned by Roca Labs is fair use and does not constitute infringement.

53.     Plaintiff's use of works whose copyright is allegedly owned by Roca Labs does not damage Roca Labs and does not constitute infringement.

54.     Plaintiff's use of works whose copyright is allegedly owned by Roca Labs, but which Roca Labs has placed or has allowed to be placed into the public domain, does not constitute infringement.

55.     Upon information and belief, Roca Labs has not registered the copyright in some or all of the works in which it claims to own the copyright, such that it has no right to proceed in or to threaten an action for enforcement thereof or to recover statutory damages or attorneys' fees or costs.

56.     By accusing plaintiff of copyright infringement, threatening imminent litigation regarding the same and demanding that to avoid litigation plaintiff eviscerate its business and

pay defendants an exorbitant sum, Roca Labs has created a present and actual controversy between the parties.

57.     Roca Labs' actions have caused plaintiff to bring this action which is the only means for it to maintain its lawful activities.

58.     Opinion Corp.'s remedy at law, in the event defendant Roca Labs seeks to obtain a preliminary injunction, is not adequate to compensate Opinion Corp. for the injuries threatened or inflicted by Roca Labs.

59.     Plaintiff requests that this Court declare and adjudicate the parties' respective rights and duties with respect to plaintiff's use of the work whose copyright is allegedly owned by Roca Labs.

### THIRD CAUSE OF ACTION
**Declaratory Judgment of**
**No Deceptive or False Advertising**

60.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

61.     Plaintiff has not made a false or misleading statement of fact in a commercial advertisement about Roca Labs.

62.     No statement made by plaintiff has either deceived or had the capacity to deceive a substantial segment of potential consumers with respect to any fact about Roca Labs that it is likely to influence consumers' purchasing decisions.

63.     No statement made by plaintiff has caused or is likely to cause Roca Labs injury.

64.     Plaintiff's conduct does not constitute deceptive or false advertising.

65.     By accusing plaintiff of deceptive or false advertising or related violations of law, including the law of the State of Florida, threatening imminent litigation regarding the same and

demanding that to avoid litigation plaintiff eviscerate its business and pay Roca Labs an exorbitant sum, Roca Labs has created a present and actual controversy between the parties.

66.     Roca Labs' actions have caused plaintiff to bring this action which is the only means for it to maintain its lawful activities.

67.     Plaintiff's remedy at law, in the event Roca Labs seeks to obtain a preliminary injunction, is not adequate to compensate it for the injuries threatened or inflicted by Roca Labs.

68.     Plaintiff requests that this Court declare and adjudicate the parties' respective rights and duties with respect to plaintiff's conduct.

## FOURTH CAUSE OF ACTION
### Declaratory Judgment of Non-Liability
### Based on 28 U.S.C. §2201

69.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

70.     Section 230 of the Communications Decency Act (the "CDA") provides that "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."

71.     The CDA provides further that "No cause of action may be brought and no liability may be imposed under any State of local law that is inconsistent with this section."

72.     PissedConsumer.com is an interactive computer service as defined by the CDA and relevant case law.

73.     Roca Labs has at all relevant times been aware that the legal claims it has advanced are baseless.

74.     Roca Labs has nonetheless threatened plaintiff with costly and inconvenient litigation unless its demands are met.

75.     By intentionally and maliciously threatening frivolous litigation, Roca Labs has deprived plaintiff of its right to operate PissedConsumer.com free from the threat of unjustified litigation, as intended by the CDA.

76.     Roca Labs purposeful and malicious threats of litigation interfere with and encroach on plaintiff's statutory right under the CDA to be immune from state law claims.

77.     By reason of the foregoing, a present, actual and justifiable controversy exists between plaintiff and  Roca Labs, which may be determined by judgment or order of this Court.

78.     Plaintiff requests that this Court declare and adjudicate the parties' respective rights and duties with respect to plaintiff's conduct.

79.     Roca Labs' actions have caused plaintiff to bring this action which is the only means for it to maintain its lawful activities.

80.     Plaintiff's remedy at law, in the event Roca Labs seeks to obtain a preliminary injunction, is not adequate to compensate it for the injuries threatened or inflicted by Roca Labs.

81.     Plaintiff requests that this Court declare and adjudicate the parties' respective rights with respect to the plaintiff's lawful practices, including the application of Section 230 of the CDA.

**FIFTH CAUSE OF ACTION**
**Declaratory Judgment of**
**Defendants' Alter Ego Liability**

82.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

83.     The August 4, 2014 letter from Roca Labs to plaintiff stated that Roca Labs was a "nutraceuticals" manufacturer based in Florida.

84.     The August 4, 2014 from Roca Labs did not claim to be written on behalf of or in connection with RLN, nor did it make any reference to RLN.

85.     The August 4, 2014 letter from Roca Labs, however, utilized letterhead bearing the mailing address listed as that of RLN in RLN's 2014 annual report filed with the Florida Secretary of State.

86.     Roca Lab's letter of August 7, 2014 also bore the same mailing address on its letterhead as the August 4, 2014 letter, i.e., the registered corporate address of RLN.

87.     That address, P.O. Box 5309, Sarasota, Florida, 34277, is also given on the RLN website as the address of RLN's legal department.

88.     On information and belief, and as alleged above, Roca Labs shares its principal office with RLN, to the extent the two entities or their activities are in fact at all distinct.

89.     Moreover, Roca Labs has repeatedly claimed to have suffered harm as result of plaintiff's conduct based on the terms and conditions of, or in connection with the sale of RLN's product through, or arising from infringement of intellectual property utilized, claimed or described at the website, i.e., www.rocalabs.com.

90.     According to the terms and conditions of use of the website found at the URL www.rocalabs.com, designated as "V2.1 Aug[.] 2014," thereon, that website is operated by RLN, not Roca Labs.

91.     At the same time, while the RLN website states, "All of the content and products on this Website are owned by RLN," the same page of the website states, under the heading "Disclaimer of Warranties and Limitation of Liability," that "THIS WEBSITE, THE PROGRAM AND ALL INFORMATION, CONTENT, MATERIALS, PRODUCTS, FORMULA AND SUPPORT INCLUDED ON OR OTHERWISE MADE AVAILABLE TO

YOU THROUGH THE USE OF THE WEBSITE ARE PROVIDED BY ROCA LABS," not RLN.

92.     Similarly, while the text of the websites terms and conditions states, "RLN claims all property rights, including intellectual property rights, to its content and no person/entity is permitted to infringe upon those rights," the footer of the website found at the bottom of each and every page states, "Copyrights © 2009-2013 Roca Labs."

93.     Besides these instances, the names "RLN" and "Roca Labs" are used interchangeably elsewhere on the website, without explanation or any statement that references to "Roca Labs" are intended to refer to RLN.

94.     In fact, on information and belief, RLN is organized and operated so that it is an instrumentality of Roca Labs, united and intermixed with respect to their promotion, sales, finances, investments or other activities such that, as a matter of law, they are not and should not be treated as two distinct legal entities.

95.     In addition, on information and belief the officers and directors of Roca Labs and RLN overlap such that, as a matter of law, they are not and should not be treated as two distinct legal entities.

96.     Moreover, as exemplified by its two demand letters to plaintiff, Roca Labs has held itself out to plaintiff as having substantial and exclusive control over RLN's interests and, on information and belief, Roca Labs does in fact maintain such control.

97.     On information and belief, Roca Labs has made use of its dominion and control over RLN to commit each of the wrongful acts alleged herein, including, but not limited to, its baseless threats of litigation.

98.     On information and belief, Roca Labs is the principal owner of RLN in connection with the matters set out in this pleading.

99.     By virtue of the foregoing, and other facts that plaintiff has learned and believes it will be able to further confirm through discovery, plaintiff is entitled to a declaration that Roca Labs is the alter ego of RLN, that the corporate veil protecting either of them as against the liability, claims or finances of the other should be pierced and that each defendant is jointly and severally liable for the claims of plaintiff set forth herein.

## SIXTH CAUSE OF ACTION
### Declaratory Judgment that Defendants' Agreement is Unlawful or Unenforceable as Against Plaintiff

100.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

101.     As noted above, third persons who are, upon information and belief, dissatisfied customers of defendants have posted comments recounting their experience and dissatisfaction on PissedConsumer.com.

102.     On information and belief, customers who have purchased defendants' products, have tried to do so, or have otherwise been affected by the foregoing conduct of defendants include residents of the State of New York.

103.     Numerous third-party posts made on PissedConsumer.com about defendants' products, terms or other aspects of customer service were, upon information and relief, written and posted by citizens or residents of the State of New York State.

104.     Examples of such posts complaining about defendants' commercial practices and posted by New York state residents include the following:





105.    As alleged above, the terms imposed on purchasers of RLN's product include a restrictive clause that purports to restrict consumers, including citizens of the State of New York, from truthfully recounting their experiences with or opinions about RLN's product with other consumers, including other New York citizens, as RLN deems them "disparaging" or "negative."

106.    On information and belief, some variant of the foregoing restrictive clause has existed on RLN's website at all relevant times.

107.    As set forth above, following the commencement of this action, RLN amended the terms on its website to include, *inter alia*, an explicit exemption of its non-disparagement requirement for California residents or transactions that take place in that state which is an acknowledgement of California law.

108.    California law prohibits any contract "for the sale or lease of consumer goods or services" from including "a provision waiving the consumer's right to make any statement regarding the seller or lessor or its employees or agents, or concerning the goods or services." Assem. Bill No. 2365 (2013-2014 Reg. Sess.) § 1.

109.    Additionally, the California statute makes it unlawful "to threaten or to seek to enforce" such a provision, and expressly provides that any purported or attempted waiver of its prohibitions "is void and unenforceable."

110.    The use of such non-disparagement clauses in consumer contracts, and defendants' ersatz "discounted price" terms  meant deceptively to simulate the exchange of consideration to aid in the legal enforceability of such terms, are also unlawful, void as against public policy and unenforceable under the law of the State of New York, including but not limited to New York General Business Law § 349(a) which prohibits "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . ."

111.    The above-described conduct is also unlawful, void as against public policy and unenforceable pursuant to § 20-700 of the New York City Administrative Code which prohibits "deceptive or unconscionable trade practice in the sale . . . or in the offering for sale . . . of any consumer goods or services . . ."

112.    Despite its actual or constructive knowledge of the fact that its restrictive clause and its advertising practices are unlawful not only in California but in the State of New York and the City of New York, RLN continues to act with reckless disregard for the rights of citizens of New York State and New York City and to threaten and menace New York citizens with the intent and effect of depriving them of those rights so as to deprive or attempt to deprive such persons of their ability to make informed decisions about the purchases of RLN's product.

113.    Defendants' threats to citizens of New York State and New York City have and will continue to have, or unless this Court enjoins such conduct will have in the future, the effect of causing consumers to refrain from posting their complaints about RLN's products and practices on PissedConsumer.com or elsewhere.

114.    Because plaintiff relies on consumer reviews of products, services and companies as the mainstay of the marketplace of ideas that constitutes PissedConsumer.com and in order to facilitate informed consumer decision-making, it has been and continues to be harmed by defendants' above-alleged conduct.

## PRAYER FOR RELIEF

WHEREFORE, Opinion Corp. prays for judgment against defendant Roca Labs and RLN as follows:

1.    For a declaration that plaintiff's use of the various trademarks and alleged trademarks associated with the defendant as set forth herein and in the attachments hereto does not infringe any trademark or other right held by the defendant;

2.    For a declaration that plaintiff's use of the various works in which copyright is alleged to be owned by the defendant as set forth herein does not infringe any copyright or other right held by any defendant;

3.    For a declaration that plaintiff's conduct as set forth herein does not constitute false or misleading advertising;

4.    For a declaration that plaintiff is immune from any state law claims pursuant to 47 U.S.C. § 230, otherwise known as § 230 of the Communications Decency Act;

5.    For a declaration that defendants are alter egos of one another, that the corporate veil should be pierced and that each defendant is individually liable for the claims set forth herein;

6.    For a declaration that the restrictive clause set forth in defendants' terms is contrary to New York public policy, and is void, unenforceable and sanctionable as against New York consumers;

7.    For a declaration that defendants take nothing from plaintiff in respect of their threatened claims;

8.    For other remedies provided by statute and other applicable law;

9.    For reasonable attorneys' fees and costs, pursuant to New York General Business Law § 349(a) and as otherwise provided by law; and

10.    Such other legal and equitable relief as the Court deems appropriate.

GOETZ FITZPATRICK LLP

By: _____
        Ronald D. Coleman (RC 3875)

Joel G. MacMull (JM 8239)
One Penn Plaza—Suite 3100
New York, New York 10119
(212) 695-8100
rcoleman@goetzfitz.com
jmacmull@goetzfitz.com

Marc J. Randazza (MR 6762) – *Admitted in AZ, CA, FL, MA and NV Only*
Theresa Haar (TH 4373) – *Admitted in NY*
RANDAZZA LEGAL GROUP
3625 South Town Center Drive
Las Vegas, Nevada 89135
(702) 420-2001
mjr@randazza.com
tmh@randazza.com

*Attorneys for Plaintiff*
*Opinion Corp.*

Dated: September 29, 2014