# EXHIBIT 2

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH, FLORIDA

ROCA LABS, INC.,                                                  CASE NO:

       Plaintiff,

vs.

MARC RANDAZZA,

       Defendant.

_____/

## **COMPLAINT AND VERIFIED MOTION FOR TEMPORARY INJUNCTION**

Plaintiff, **ROCA LABS, INC. ("ROCA")**, a Florida Corporation, by and through the

undersigned counsel, files this Complaint, Verified Motion for Temporary Injunction and

Declaratory Action against Defendant, **MARC RANDAZZA**, and states as follows:

## **PARTIES, JURISDICTION, AND VENUE**

1. This is an action for injunctive relief, declaratory relief, and for breach of contract involving

   damages in excess of $15,000, exclusive of interest, costs and attorneys' fees.

2. Venue is proper in this Honorable Court as this is an action for Tortious Interference and

   Defamation *Per Se* and seeks an award of money damages, including actual damages,

   punitive damages and reasonable attorneys' fees and costs; an award of compensatory

   damages under common law claim of tortious interference with a contractual relationship; an

   award of compensatory damages under common law claim of tortious interference with a

   prospective relationship, an award of compensatory damages under common law claim of

   defamation and injunctive and declaratory relief all stemming from conduct that occurred in

   Florida.

3.  Plaintiff **ROCA** is a Florida for-profit corporation with its principal place of business at 7261A Tamiami Trail S, Sarasota, FL 34231.

4.  **RANDAZZA** is an individual residing in Nevada and practicing law in Florida.

5.  Pursuant to Florida Statutes Section 48.193(2), **RANDAZZA** is subject to personal jurisdiction in Florida because he committed a tortious acts within the State of Florida.

6.  Pursuant to Florida Statutes Section 48.193(1)(a), **RANDAZZA** is subject to personal jurisdiction in Florida because he practices law within the State of Florida and maintains a law office within the State of Florida.

7.  **ROCA** retained the undersigned counsel and agreed to pay a reasonable fee for its services.

8.  All conditions precedent to the filing of this Complaint, if any, have been satisfied, performed, or waived.

## GENERAL ALLEGATIONS

### *A.  PLAINTIFF ROCA*

9.  **ROCA** is a Florida for-profit corporation that was formed in 2006 as Appealing Ventures, Inc.  It changed its name to Roca Labs, Inc. in 2009.

10. **ROCA** manufactures food additives (sometimes referred to a nutraceuticals) and is the inventor of the proprietary Gastric Bypass Alternative® that is an effective weight loss option for people who are trying to lose in excess of 50 pounds.

11. **ROCA**'s products have been purchased and used by thousands of people as a surgery-free alternative to gastric bypass.

12. **ROCA**'s products are safe and effective when used as directed.  Thousands of individuals have used **ROCA** products to lose weight.

13. **ROCA**'s products are a natural alternative to surgery and to the best of its knowledge, no one has required medical treatment or hospitalization from the proper use of **ROCA**'s products.

14. **ROCA** made significant investments in product development and in its intellectual property rights.

15. **ROCA** owns numerous registered trademarks including: **ROCA** Labs®, Gastric Bypass Alternative®, Gastric Bypass Surgery Alternative®, Gastric Bypass Effect®, Gastric Bypass Results®, Natural Gastric Bypass®, Gastric Bypass No Surgery® and Anti Cravings®. **ROCA**'s trademarks are inherently distinctive.

16. **ROCA** invests heavily in an online marketing and advertising program that has run in Florida and across the United States.

17. **ROCA** markets and sells its products through its website, "www.rocalabs.com," where information on its products is available and consumers can purchase the product directly.

18. **ROCA** relies upon its reputation, internet reviews, and the weight loss success stories of its customers to generate new business and attract new customers.

19. **ROCA** relies upon its reputation and the weight loss success of its customers to generate new business and attract new customers.

20. Indeed, **ROCA** has a unique Money Back Reward program, where **ROCA** pays individuals a monetary sum for sharing their weight loss success stories.

21. A recent search for **ROCA** Labs on "YouTube" pulled up more than six-thousand (6,000) results, the majority of which are personal weight loss videos shared by individuals.

22. Unfortunately, due to the unencumbered nature of the internet, anyone with a keyboard can voluntarily and intentionally detract from the thousands of positive stories with just one harmful article, interview, tweet, blog, or posting.

23. For instance, Consumer Opinion Corp. and Opinion Corp. own and operate pissedconsumer.com (hereinafter collectively "Pissed Consumer"), an internet haven for consumers, competitors or even Pissed Consumer itself to denigrate, disparage, and defame thousands of small businesses, regardless of the truth or veracity of the posting.

24. Based on the website's name alone, Pissed Consumer invites inherently negative commentary to be disseminated on their website. In other words, a happy or satisfied consumer would not seek out *Pissed* Consumer to communicate a positive story to the world.

25. **ROCA**'s business relationships were and are interfered with by Pissed Consumer. As a result, **ROCA** continues to suffer irreparable harm at the hands of Pissed Consumer.

26. Pissed Consumer defamed and continues to defame **ROCA**.  As a result, **ROCA** continues to suffer irreparable harm at the hands of Pissed Consumer.

27. **ROCA** took legal action to protect its rights and reputation in the State of Florida and sued Pissed Consumer (*Roca Labs v. Consumer Opinion Corp.* and *Opinion Corp.* Case No 8:14-cv-2096-T-33EAJ Middle District of Florida) for issues concerning, among other things, Pissed Consumer's violations of Florida's Deceptive and Unfair Trade Practice Act, Tortious Interference, and Defamation.  **RANDAZZA** is legal counsel for Pissed Consumer in the foregoing matter.

### *B.  DEFENDANT RANDAZZA*

28. **RANDAZZA** is an individual residing Nevada.

29. **RANDAZZA** is an attorney and is licensed to practice law in the State of Florida and **RANDAZZA** maintains a law office in Florida.

30. **RANDAZZA** gained notoriety for providing legal services to the pornography and adult entertainment fields. He has represented a number of adult entertainment companies, including Kink.com, BangBus.com, and MilfHunter.com.[1]

31. **RANDAZZA** has been an outspoken advocate for Phillip Greaves, the author of "*The Pedophiles Guide to Love and Pleasure.*"  Mr, Greaves pled no contest to criminal charges in Florida because of his distribution of the book in Florida.

32. **RANDAZZA** adopted the use of the Latin term "*murum aries attigit*" to describe his approach to litigation.  The foregoing phrase translates to "the ram has touched the wall," and refers to the ancient Romans' strategy of not allowing mercy and slaughtering everyone in a city if they did not surrender before the Roman battering ram touched the city's walls.  **RANDAZZA** adopted this term for his approach to the legal profession, and consequently, behaves as if litigation is his own war.[2]

33. Despite being an Officer of the Court and a practicing member of the Florida Bar, **RANDAZZA** has waged his war against **ROCA** by intentionally and maliciously publishing many false and defamatory statements in his pleadings, with the intent to share them to his contacts in the media, and indeed by directly speaking to the media about **ROCA** with the intent to have them publish false, misleading and defamatory articles about **ROCA**, and by

---

[1] *See* Wikipedia (http://en.wikipedia.org/wiki/Marc_Randazza)
[2] *Id*.

harassing and making derogatory statements about **ROCA** via his personal social media sites including his Twitter account.

34. **RANDAZZA** announced his war against **ROCA** via a simple email to Paul Berger, counsel for **ROCA**, that simply read *murum aries attigit*. (*See below*, Exhibit 1 email from **RANDAZZA** to Paul Berger).



35. Fortunately, we are not the ancient Romans and do not live in fear of attacks from battering rams. However, **RANDAZZA** waged modern day warfare by attacking and bullying his perceived enemy **ROCA** in the media for the sole purpose of harming **ROCA** and crippling it financially by battering away its customers.

36. Indeed, the Institute for Defense and Government Advancement has said the following: "harnessing and controlling messages distributed via the internet and social media will be a next big battleground to win the heart and minds of the world's masses regardless of who is the enemy of the day. The question of which nations will control and push out the message most effectively will become increasingly important. One thing is clear; whoever controls the message controls the masses. And whoever controls the masses will have the ability to win future wars."[3]

37. Through his own words, **RANDAZZA** is admittedly waging a modern war in the online media against **ROCA**.

---

[3] *Psychological Warfare in the Social Media Era: Winning Hearts and Minds through Facebook and Twitter?*, Nick Younker, Institute for Defense and Government Advancement, September 7, 2010.

38. **RANDAZZA** uses whatever opportunity his has to fight his war against **ROCA**. For example, just recently **RANDAZZA** used the children's holiday of Halloween in an attempt to humiliate **ROCA** and malign the company in public by making the intentionally false and malicious statement "Some fucker put Roca Labs' shit in my kids candy bag!" (*See* Tweet below). The Tweet came from his personal Twitter account "@marcorandazza," and has been retweeted to more than 5,000 people as of the date of this filing.



39. The foregoing defamation is not the first perpetration by **RANDAZZA**; rather, he routinely issues statements about **ROCA** on Twitter. The statements are not related to litigation between **ROCA** and Opinion Corp., but are made with malice and with the purpose to mock, ridicule, humiliate, harm, and continue his war against **ROCA**.

40. As a Member of the Florida Bar and an Officer of the Court, **RANDAZZA's** statements are more likely to be viewed as true and correct by the general public. When **RANDAZZA**

makes the statement "Some fucker put Roca Labs' shit in my kids candy bag!" because of his

respected position an ordinary individual may believe it to be true.

41. According to the *Creed of Professionalism* for trial lawyers established by the Florida Bar;

> (1) A lawyer is both an officer of the court and an advocate. As such, the lawyer always should strive to uphold the honor and dignity of the profession, avoid disorder and disruption in the courtroom, and maintain a respectful attitude toward the court; (4) A lawyer should be courteous and civil in all professional dealings with other persons. Lawyers should act in a civil manner regardless of the ill feelings that their clients may have toward others. Lawyers can disagree without being disagreeable. Effective and zealous representation does not require antagonistic or acrimonious behavior. Whether orally or in writing, lawyers should avoid vulgar language, disparaging personal remarks, or acrimony toward other counsel, parties, or witnesses; and (7) A lawyer must not use any aspect of the litigation process, including discovery and motion practice, as a means of harassment.

42. **RANDAZZA**'s actions show his disdain for the Court system, the rules that govern the

Florida Bar, and our legal system.  To **RANDAZZA**, winning the war and harming his

opponents is what is most important.  There is no room for civility, truth, or justice.

### *C.  THE DEFAMATORY STATEMENTS*

#### **1)**  **Original Dissemination to the Media Prior to Court Pleadings**

43. **RANDAZZA** made defamatory statements *first* to the media, then repeated them in

*subsequent* Court filings.

44. Beginning on or about September 8, 2014, and continuing to present date, **RANDAZZA**

went to his friends in the online media and caused select webzines / online media sites to

encourage the publishing of false and defamatory articles about ROCA (*See* Exhibit 2

September 8 & 9, 2014 articles).

45. **RANDAZZA** went to the media before he made any responsive pleadings in the *Roca Labs*

*v. Opinion Corp.* case.

46. **RANDAZZA** is referenced in the articles contained within Exhibit 2, and the articles reference information that **RANDAZZA** provided to the media outlets.

47. **RANDAZZA** encouraged the media for the sole purpose of harassing, defaming, and injuring **ROCA** as part of his war against **ROCA**.

48. **RANDAZZA**'s war against **ROCA** began with him telling the media that **ROCA** was snake oil salesman, **ROCA's** products did not work, made people sick, were a health hazard, and that the government was going to close **ROCA** down.

49. On September 8, 2014, TechDirt, an online magazine (or webzine), which claims 1.2 million unique visitors a month, published the first of what would be a long series of negative articles about **ROCA** from the "good thing we never bought anything from Roca Labs dept." at TechDirt (*See* Exhibit 2).

50. The September 8, 2014 article states that **ROCA** is the "manufacturer of 'dietary supplements' some of which they label with highly questionable claims that I imagine would not be supported by anything the FDA would consider to be credible evidence."

51. The article *foreshadows* the later defenses **RANDAZZA** would put forth on behalf of Opinion Corp. and references ROCA's Complaint stating, "Almost everything there is ridiculous. Presenting a platform for people to express their own opinions is not encouraging them to break any contract (which, again, is of dubious legality in the first place). Second, the site is not authoring or co-authoring the posts. Third, there's no evidence that anything being posted is 'false.' Fourth, what does Twitter's total user base have to do with anything?"

52. **RANDAZZA** caused these articles to be published, and, based on his past dealings with TechDirt, knew the articles would be disseminated all throughout the internet.

53. Interestingly, without ever reading the Complaint, TechDirt was familiar with the arguments against Pissed Consumer and its future defenses.

54. Further, on September 9, 2014, BoingBoing.net wrote "Roca Labs sells dubious snake-oil like a 'Gastric Bypass Alternative.'"  Once again these words would *foreshadow* the words used by **RANDAZZA** in the pleadings.

55. As a result of **RANDAZZA's** communications with the media, and his own voluntary actions of dissemination, the Defamatory Statements about **ROCA** were thereby purposefully and resolutely published and disseminated to numerous third-parties in online magazines, websites, and blogs.

56. **RANDAZZA** unequivocally acted with intent and malice in making and distributing the Defamatory Statements.

### 2) The Subsequent Dissemination in Court Pleadings

57. On or about *September 18, 2014*, **RANDAZZA** filed Pissed Consumer's *Opposition to Plaintiff's Motion for Entry of a Temporary Injunction* (attached as Exhibit 3), which ironically includes the same false, malicious and defamatory statements he previously made to the media a little more than a week earlier.  These statements include, but are not limited to:

    a. **ROCA** shows little concern for what happens to its users;

    b. [**ROCA** sounds] like a disreputable company, producing tubs of snake oil (or snake oil goop, as it were);

  c. **ROCA** Labs is desperately trying to force a cone of silence over each and every customer that discovers that **ROCA** Labs' product is not only a specious remedy for weight issues, but a potential cause of additional health problems;

  d. Plaintiff [**ROCA**], desperate to sell as many tubs of goo to the public as it can before regulatory agencies come knocking; and

  e. [**ROCA** Products may cause] a possible health crisis.

58. Additionally, in Pissed Consumer's *Emergency Motion for a Temporary Restraining Order* (attached as Exhibit 4), filed on or about ***September 22, 2014***, **RANDAZZA** repeated his false, malicious and defamatory statements he previously made to the media including, but not limited to:

  a. **ROCA**'s product threatens the health and welfare of at least a portion (if not all) of its users; and

  b. **ROCA** has threatened them [its customers].

  (These statements along with the statements referenced in the paragraphs, *supra*, are hereinafter collectively referred to as "Defamatory Statements.")

59. The Defamatory Statements were first made as factual allegations in the media, and cannot be claimed to be his personal opinion, puffery, or supposition.

60. Therefore, chronologically speaking, **RANDAZZA** made his Defamatory Statements *first* to the media on *September 8, 2014*, and then approximately ten days later memorialized the exact same statements in Court pleadings on *September 18 and 22, 2014*, respectively.

61.  Not Surprisingly, in Pissed Consumer's Answer to Roca Labs's Complaint, which was filed with the Middle District Court on September 11, 2014 and submitted by **RANDAZZA**,

Pissed Consumer claims little or no knowledge about **ROCA**.   Again, chronologically speaking, there was a claim of no knowledge about **ROCA** after **RANDAZZA** had been defaming **ROCA** to the media.

62. These statements were repeated by TechDirt, BoingBoing, ArsTechnica, and other media outlets (*See* Composite Exhibit 5).   For example on September 22, 2014, TechDirt published an article that contained the following:

> As the filing questions, all of these should raise red flags about the company and its products:
>
> Does that sound like an upstanding company that stands behind its safe and reliable product? Or does that sound like a disreputable company, producing tubs of snake oil (or snake goop, as it were), and which knows that too much truth will hurt its fly-by-night bottom line? Roca Labs is desperately trying to force a cone of silence over each and every customer that discovers that Roca Labs' product is not only a specious remedy for their weight issues, but a potential cause of additional health problems. Plaintiff, desperate to sell as many of its tubs of goo to the public as it can before regulatory agencies come knocking does its best to bully its former customers into silence.

63. **RANDAZZA** promoted the article at TechDirt that repeated his Defamatory Statements about **ROCA** on his Twitter account.





64. **RANDAZZA** also had Tracy Coenen, an accountant and colleague, publish an article entitled "Roca Labs Weight Loss Scam" that repeats the defamatory statements (*See* Exhibit 6). Mrs. Coenen has a long standing relationship with **RANDAZZA**, and on February 2, 2013 wrote on her Facebook page "First Amendment lawyer Marc Randazza is amazing." There would be no other reason for an Illinois accountant to publish on her blog an article about Roca Labs other than her relationship with **RANDAZZA** and to assist her friend with his war against **ROCA**.  Mrs. Coenen also Tweeted about her article, calling Roca Labs a "scam":



65. Essentially, **RANDAZZA** restated his previously made Defamatory Statements in his subsequent Court pleadings in hopes of shielding himself from liability under judicial litigation privilege.  In all events, it is abundantly clear that **RANDAZZA**, a seasoned litigator specializing in First Amendment and Defamation practices, should know that the judicial litigation privilege cannot be used as a sword and a shield.

### D.  *RANDAZZA CAUSED AND CONTINUES TO CAUSE INJURY TO ROCA*

66. The publications of Defamatory Statements by **RANDAZZA** brought disgrace, humiliation, injury, and loss to **ROCA**'s business relationships, reputation, and goodwill in the community.

67. These publications, and ensuing purposeful dissemination, regarding **ROCA** hurt **ROCA**'s business**,** drove away customers, and interfered with **ROCA**'s ability to sell its products.

68. **RANDAZZA** made the Defamatory Statements in the media *first*, and then *subsequently* in Court pleadings at a later date.

69. At the time **RANDAZZA** voluntarily made the Defamatory Statements, he did not have any genuine knowledge or regard for the truth and veracity of the Defamatory Statements regarding **ROCA**'s customer care.

70. At the time **RANDAZZA** voluntarily made the Defamatory Statements, he did not have any genuine knowledge or regard for the truth and veracity of the Defamatory Statements regarding any health risks associated with **ROCA** products, which have safely been used by more than 10,000 people.

71. At the time **RANDAZZA** voluntarily made the Defamatory Statements, he did not have any genuine knowledge or regard for the truth and veracity of the Defamatory Statements regarding any alleged (solely by **RANDAZZA**) government actions against **ROCA**.[4]

---

[4] **ROCA** is unaware of any pending investigation or inquiry into its company as alleged by **RANDAZZA**.  Indeed, if *assuming arguendo*, there were an ongoing investigation, it would be hard to believe that any U.S. Government Regulation Agency, including the Food and Drug Administration, would share such confidential information with a private citizen.

72. At the time **RANDAZZA** voluntarily made the Defamatory Statements, he did not have any genuine knowledge or regard for the truth and veracity of the Defamatory Statements regarding **ROCA**'s internal business policies and programs.

73. In truth, **RANDAZZA** knew when he made his Defamatory Statements that they lacked merit, lacked truth, were unsubstantiated, and were injurious to **ROCA**.

74. The Defamatory Statements caused and continue to cause injury, harm, and damage to **ROCA**, including but not limited to irreparable harm, public humiliation, and unwarranted ill-repute in the community, which in this case extends to the internet.

75. The Defamatory Statements were disseminated by **RANDAZZA** to numerous third-parties, with the full knowledge that those third-parties would further disseminate his Defamatory Statements.

76. Based on the foregoing, **RANDAZZA** engaged in conduct which was intentional, fraudulent, malicious, oppressive, and/or he engaged in conduct with such gross negligence as to indicate a wanton disregard for the rights of **ROCA**.

77. **RANDAZZA** was politely asked to stop speaking to the media by Paul Berger, counsel for Roca Labs.  On September 26, 2014, Mr. Berger sent **RANDAZZA** an email respectfully requesting that he stop speaking to the media, informing him of his limited immunity and providing him with notice to retract his statements in accordance with Florida law.  (*See* Exhibit 7).

78. **RANDAZZA'S** response to the email by Mr. Berger, was to immediately distribute the email to the media and to Tweet about it.



79. TechDirt published the following:

Roca Labs' lawyer, Paul Berger, also sent threatening emails to Randazza himself, suggesting that Randazza had been "making defamatory comments" to the media. The email exchange, which Randazza filed as an exhibit with his filing, shows Randazza responding to Berger asking what specific defamatory quote he's talking about. Berger instead quotes PissedConsumer's legal filing (about calling Roca Labs' product "snake oil"), which we (and, I believe) other news publications, quoted. Randazza pointed out to Berger that it was not a quote from him but rather in his pleadings, and then asked (one assumes, sarcastically) if Berger is truly asking Randazza to retract a statement from his motion for preliminary injunction. I would assume that Berger is aware of the concept of litigation privilege, so either he didn't fully read Randazza's earlier filings, he forgot about litigation privilege, or he's just blustering for the sake of blustering. Randazza's latest filing suggests the latter may be the case:

The desperation continued with Roca threatening personal claims against the Defendants' attorney for statements made in the course of litigation.

80. In addition, two days after the email **RANDAZZA** once again took to Twitter, but this time to mock **ROCA's** legal team.



16

81. It is clear that **RANDAZZA** believes that litigation is war, and that pleadings are a miraculous battle shield that permits lawyers to make intentionally false, misleading and defamatory statements for the sole purpose of inflicting as much injury on an adversary as possible. **RANDAZZA's** strategy is to beat up **ROCA** in the court of public opinion, to drive away its customers, and hope that **ROCA** will "cry uncle" and give up its day in Court.

### COUNT I
### TORTIOUS INTERFERENCE WITH ROCA's
### PROSPECTIVE ECONOMIC RELATIONSHIPS

82. The allegations set in forth in paragraphs 1 through 81 are incorporated by reference as if fully repeated herein.

83. **ROCA** derives it revenues through online sales of its product to consumers seeking to lose weight.

84. **ROCA** has an actual prospective economic relationship with internet users that search for **ROCA** and its products on search engines.

85. **RANDAZZA** is aware of the existence of **ROCA**'s prospective economic relationship with internet users who desire to purchase **ROCA**'s weight loss products.

86. **RANDAZZA** made and disseminated Defamatory Statements with the knowledge that they would reach **ROCA**'s potential consumers and cause them to view false, negative and misleading information when they search the internet using search engines.

87. **RANDAZZA** knowingly and intentionally warned (essentially counseled) internet users against the purchase of **ROCA** products.

88. The conduct of **RANDAZZA** tainted the actual prospective economic relationship with numerous consumers and these customers were lost because of the malicious and intentional conduct of **RANDAZZA**.

89. Indeed, customers have refused to order and reorder from **ROCA** as a direct and proximate result of **RANDAZZA'**s intentional interference with said relationships.

90. But for the intentional interference, **ROCA** would have sold products to the internet users.

91. As a direct and proximate cause of **RANDAZZA's** conduct, consumers have not purchased **ROCA** products.

92. Thus, as a direct and proximate cause of the **RANDAZZA's** intentional and unjustified tortious interference, **ROCA** has suffered non-monetary and monetary damages.

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** respectfully requests that this Honorable Court declare that Defendant, **MARC RANDAZZA**, has intentionally disrupted and interfered with **ROCA**'s prospective economic relationships, and further, that this Honorable Court grant temporary and permanent injunctive relief against the violating conduct, and award **ROCA** with an amount fair and just to account for its money damages, interest, reasonable attorneys' fees, and costs incurred herein, and for such other relief as this Court deems just and proper.

## COUNT II
## DEFAMATION *PER SE*

93. The allegations set in forth in paragraphs 1 through 92 are incorporated by reference as if fully repeated herein.

94. **RANDAZZA** is representing Pissed Consumer in a case justifiably brought against those Defendants by **ROCA** in the State of Florida.

95. **RANDAZZA** authored and filed several pleadings in that action, including Exhibits 3 and 4.

96. However, *prior to filing* the foregoing Court pleadings, **RANDAZZA** made and disseminated false, malicious and Defamatory Statements to the media.

97. **RANDAZZA** authored and published the Defamatory Statements to the media and disseminated the content via social media websites.

98. *After the foregoing mass dissemination* of the Defamatory Statements *to the media* perpetrated by **RANDAZZA**, he *subsequently* repeated his Defamatory Statements over a week later in Court filings.

99. It is unequivocal that **RANDAZZA** made and disseminated his Defamatory Statements *first* to the media *on September 8*, *and then ten days later* in Court pleadings.

100. In truth, **RANDAZZA** knew when he made his Defamatory Statements that they lacked merit, lacked truth, were unsubstantiated, and were injurious to **ROCA**. The Defamatory Statements were made only for his own war against **ROCA** and for **RANDAZZA's** own public relations efforts.

101. **RANDAZZA**'s Defamatory Statements caused and continue to cause injury, harm, and damage to **ROCA**, including, but not limited to irreparable harm, public humiliation, and unwarranted ill-repute in the community, which in this case extends to the internet.

102. **RANDAZZA**'s Defamatory Statements were made and disseminated by **RANDAZZA** to numerous third-parties, with the full knowledge that those third-parties would in fact further disseminate his Defamatory Statements.

103. As a direct and proximate result of **RANDAZZA**'s reckless, wrongful and malicious statements, **ROCA** has suffered significant loss of reputation as well as business opportunities.

104.   **ROCA**'s losses include, but are not limited to, the failure of **ROCA** to sell its product to identifiable potential customers as well as significant lost revenues from other potential customers.

105.   Based on the foregoing, **RANDAZZA** engaged in conduct which was intentional, fraudulent, malicious, oppressive, and/or he engaged in conduct with such gross negligence as to indicate a wanton disregard for the rights of **ROCA**.

106.   The Defamatory Statements made by **RANDAZZA** against **ROCA** constitute defamation *per se* under the law.

107.   **RANDAZZA** was provided with notice as required by Chapter 770, *Florida Statute*.  A true a correct copy of the email notice is attached hereto as Exhibit 7.

108.   **RANDAZZA** confirmed his receipt of the foregoing notice when he referenced the notice in a Court filing, shared the communication with the media, disseminated the notice on the internet, and used the notice to further harass and harm **ROCA.**  *See* Exhibit 8.

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** respectfully requests that this Honorable Court declare that Defendant, **MARC RANDAZZA**, has defamed **ROCA** *per se*, and further grant temporary and permanent injunctive relief against the violating conduct, and award **ROCA** with an amount fair and just to account for its money damages, interest, reasonable attorneys' fees, and costs incurred herein, and for such other relief as this court deems just and proper.

## COUNT III
## DECLARATORY RELIEF AGAINST RANDAZZA

109.   The allegations set in forth in paragraphs 1 through 108 are incorporated by reference as if fully repeated herein.

110.   This is an action for declaratory relief pursuant to Section 86.011, *Florida Statute*.

20

111.  There is a bona fide, actual, present practical need for declaratory relief in this matter.

112.  A present controversy with ascertainable facts exists between the parties in this matter.

113.  **RANDAZZA** has intentionally interfered with **ROCA**'s economic relationship with potential customers when he made his Defamatory Statements to the media, and then later memorialized the exact statements in Court pleadings.

114.  **RANDAZZA**'s conduct directly and proximately caused **ROCA** to monetary damages that continue to accrue, as well as irreparable harm to **ROCA**'s reputation.

115.  **ROCA** is in doubt as to their rights under Florida law and is in need of a present declaration whether the conduct of **RANDAZZA**, *i.e.*, the Defamatory Statements, tortiously interfered with **ROCA**'s prospective economic relationship with potential customers.

116.  **ROCA** is in doubt as to their rights under Florida law and is in need of a present declaration whether the conduct of **RANDAZZA**, *i.e.*, the Defamatory Statements, defamed **ROCA** *per se*.

117.  There is a bona fide, actual dispute between the parties based on the refusal of **RANDAZZA** to cease and desist its conduct after **ROCA** has requested same. *See* Exhibits 7 and 8.

118.  **ROCA** seeks relief in order to enforce contractual and legal rights, and does not merely seek legal advice from this Honorable Court.

119.  **ROCA**'s right to recovery is dependent upon the Court's finding of facts and/or application of same to Florida law.

120.  The parties' interests in this declaration of rights are actual, present, adverse and antagonistic of fact and/or law.

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** requests the Court to:

a.      Take jurisdiction of the subject matter and parties hereto;

b.      Determine applicable law, including the provision(s) of *Florida Statute* that apply to the parties;

c.      Declare that **RANDAZZA** has intentionally, tortiously interfered with **ROCA**'s economic relationship with consumers;

e.      Declare that **RANDAZZA** has defamed **ROCA** *per se*;

g.      Declare that **ROCA** has suffered economic damages as proximate result of Defendant's conduct;

h.      Declare that **ROCA** is entitled to attorneys' fees and costs against **RANDAZZA** and determine the amounts thereof;

i.      Declare that **ROCA** is entitled to award of monetary damages against **RANDAZZA** and determine the amounts thereof;

j.      Declare that **RANDAZZA** cease and desist his defamatory conduct;

 k.      Award damages, interest, and taxable costs against **RANDAZZA**; and

m.      Award any other relief this Court deems just and proper against **RANDAZZA.**

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** respectfully requests that this Honorable Court enter judgment against Defendant, **MARC RANDAZZA**, for all damages, attorneys' fees, and costs.

## VERIFIED MOTION FOR ENTRY OF A TEMPORARY INJUNCTION

Plaintiff, **ROCA LABS, INC.,** by and through its undersigned counsel and pursuant to Rule 1.610 of the Florida Rules of Civil Procedure and Section 688.003, *Florida Statute*, hereby moves this Court to enter a temporary/preliminary injunction forcing Defendant, **MARC RANDAZZA**, to (a) cease and desist intentionally and tortiously interfering with the business relationships of **ROCA**, (b) formally retract, in writing, any and all previously made and/or disseminated Defamatory Statements of or about **ROCA**, and (c) remove any and all previously made Defamatory Statements of or about **ROCA** from media outlets in which **RANDAZZA** has an interest in, controls, or otherwise has authority over its content. In support hereof, **ROCA** states as follows:

## INTRODUCTION

This motion is supported by the verified factual allegations in the *Complaint* filed contemporaneously herewith, and said allegations are incorporated by reference and will not be reiterated verbatim herein.  As stated above, **RANDAZZA** made Defamatory Statements about **ROCA** *first* to the media, and then repeated them verbatim in *subsequent* Court filings. The publications of the Defamatory Statements brought disgrace, humiliation, injury, and loss to **ROCA**'s business relationships, reputation, and goodwill in the community.  These publications about **ROCA** hurt **ROCA**'s business**,** drove away customers, and interfered with **ROCA**'s ability to sell its products. The foregoing conduct tortiously interfered with the business practices and relationships of **ROCA**.

The verified allegations conclusively demonstrate that (a) there is a substantial likelihood that **ROCA** will prevail on the merits of this case and (b) in the absence of injunctive relief to

maintain the status quo pending the outcome of the case, **ROCA** will suffer immediate and irreparable injury.

## MEMORANDUM OF LAW

### A.  STANDARD FOR INJUNCTIVE RELIEF

Under Florida law, there are four prerequisites to the granting of preliminary injunctive relief: (1) the plaintiff will suffer irreparable harm; (2) the plaintiff has no adequate remedy at law; (3) there is substantial likelihood that the plaintiff will prevail on the merits; and (4) a temporary injunction will serve the public interests.  *Provident Mgt. Corp. v. City of Treasure Island*, 796 So.2d 481, 485 n. 9 (Fla. 2001); *Naegel Outdoor Advertising Co., Inc. v. City of Jacksonville*, 659 So.2d 1046, 1047 (Fla. 1995).

### B.  INJUNCTIVE RELIEF IS APPROPRIATE

As a general rule, a trial court has sound discretion to grant injunctions. *Precision Tune Auto Case, Inc. v. Radcliff*, 731 So.2d 744, 745 (Fla. 4th DCA 1999).  Further, the purpose of a preliminary injunction is to prevent future harm.  *Advantage Digital Sys., Inc. v. Digital Imaging Servs., Inc.,* 870 So. 2d 111, 116 (DCA Fla. 2004)("By its nature, an injunction restrains commission of a future injury; a court cannot prevent what has already occurred.")  Thus, it is not necessary for a party seeking a preliminary injunction to wait until harm has occurred; such a delay would defeat the purpose of injunctive relief.  The facts of this case demonstrate that all of the elements are easily satisfied, and the requested injunction should be issued by this honorable Court.

### 1)   *In the Absence of Injunctive Relief, ROCA Will Suffer Irreparable Harm*

Irreparable injury is an injury which is of a peculiar nature, so that compensation in money cannot atone for it.  *Mullinix v. Mullinix*, 182 So. 2d 268 (Fla. 4th DCA 1966); *First Nat. Bank n St. Petersburg v. Ferris*, 156 So. 2d 421 (Fla. 2nd DCA 1963).   Due to the nature of the internet (which is the arena for the majority of the events that gave rise to this cause), defamatory postings can cause great harm with very little effort.

The actions taken by **RANDAZZA** created an immediate and viable state of emergency for **ROCA**, which has already caused **ROCA** to incur substantial damages and which threaten further immediate and irreparable harm, *to wit*: (a) **ROCA** has lost daily sales of thousands of dollars through the date of this filing, and those sales will continue to be lost until the actions of **RANDAZZA** are prohibited or cured and (b) the conduct of **RANDAZZA** tainted the actual prospective economic relationship with numerous consumers and these customers were lost because of the malicious, intentional conduct of **RANDAZZA**.   Indeed, the actions taken by **RANDAZZA** threaten to destroy **ROCA**'s business.   There is likely potential irreparable harm that is reasonably likely to result in the absence of an injunction.

### 2)   *Plaintiffs Do Not Have An Adequate Remedy at Law*

**ROCA** does not have an adequate remedy law because an injunction is the only means available to stop **RANDAZZA** from tortiously interfering with the business practices and relationships of **ROCA**.   If an injunction is not issued, **ROCA** will likely continue to lose business relationships that can never be reestablished.   Further, monetary damages that would arise from **RANDAZZA**'s continued misconduct are not readily ascertainable and, in all events, would be insufficient to compensate **ROCA** for the wrongs committed by **RANDAZZA**.   Given

the vagaries associated with calculating lost business, lost customers, and lost goodwill in the community, no legal remedy can adequately compensate **ROCA** for **RANDAZZA**'s actions.

### *3)  Plaintiffs Are Substantially Likely To Prevail On The Merits*

**ROCA** is substantially likely to prevail on the merits in this matter, particularly with respect to the issues raised by this Motion.  **ROCA** does not request that the Court pre-judge all of the issues raised by its Complaint; rather, the relief requested herein is narrowly limited to ensuring that **RANDAZZA** (a) cease and desist intentionally and tortiously interfering with the business relationships of **ROCA**, (b) formally retract, in writing, any and all previously made and/or disseminated Defamatory Statements of or about **ROCA**, and (c) remove any and all previously made Defamatory Statements of or about **ROCA** from the media outlets in which **RANDAZZA** has an interest in, controls, or otherwise has authority over its content.

**RANDAZZA** made Defamatory Statements about **ROCA** *first* to the media, and then repeated them verbatim in *subsequent* Court filings.  The parties are unequivocally aware of the certain Defamatory Statements at issue. Further, as shown in the *Verified Complaint for Damages and Injunctive Relief* , the defenses **RANDAZZA** will undoubtedly attempt to raise are inapplicable as a matter of fact and law.  The publications of the Defamatory Statements brought disgrace, humiliation, injury, and loss to **ROCA**'s business relationships, reputation, and goodwill in the community. These publications about **ROCA** hurt **ROCA**'s business**,** drove away customers, and interfered with **ROCA**'s ability to sell its products.  The foregoing conduct tortiously interfered with the business practices and relationships of **ROCA**. Thus, the *Verified*

*Complaint for Damages and Injunctive Relief* does in fact and law demonstrate that **ROCA** is likely to prevail on the merits.

### 4)  *An Injunction is in the Public Interest*

**ROCA** seeks an injunction in order to prevent further monetary damages and other irreparable harm from lost business, lost customers, and lost goodwill that is reasonably likely to occur if **RANDAZZA** continues to defame **ROCA** and tortiously interfere with the business practices and relationships of **ROCA**.  Under these circumstances, an injunction is in the public's interest.  *See Pino v. Spanish Broad. Corp.*, 564 So.2d 186, 189 (Fla. 3d DCA 1990)(holding that the public is entitled to rely on certainty in contracting and the protection of property rights; indeed, commercial development depends on the ability of a company to protect its legitimate business interests); *see also Silvers v. Dis-Com Sec., Inc.*, 403 So.2d 1133, 1137 (Fla. 4th DCA 1981) ("[i]f contracts are to have any viability at all, there must be some means of meaningful enforcement available for the courts….").

### C.  *BOND*

In cases in which a Temporary Injunction is issued, a bond is required to be posted by the movant; the amount of the bond is completely within the Court's discretion.  *See* Fla.R.Civ.P. 1.610(b); *Montville v. Mobile Medical Industries, Inc.*, 855 So.2d 212, 215 (Fla 4th DCA 2003) (holding that "the trial court is generally afforded discretion in setting the amount of a bond for a temporary injunction entered pursuant to Rule 1.610(b)").  Generally, the amount of the bond should reflect the damages that are reasonably foreseeable if the injunction is found to have

wrongfully issued.  In this case, a bond of no more than $1,000.00 is appropriate because of the (a) narrow injunctive relief sought and (b) lack of monetary damage suffered by **RANDAZZA**.

## CONCLUSION

WHEREFORE, Plaintiff, **ROCA LABS, INC.,** by and through undersigned counsel, moves this Court to enter a temporary/preliminary injunction forcing Defendant, **MARC RANDAZZA**, to (a) cease and desist intentionally and tortiously interfering with the business relationships of **ROCA**, (b) formally retract, in writing, any and all previously made and/or disseminated Defamatory Statements of or about **ROCA**, and (c) remove any and all previously made Defamatory Statements of or about **ROCA** from the media outlets in which **RANDAZZA** has an interest in, controls, or otherwise has authority over its content.

## REQUEST FOR ATTORNEY'S FEES

Plaintiff, **ROCA LABS, INC.,** requests an award of attorney's fees, costs, and such other relief that the Court finds to be appropriate.

## DEMAND FOR JURY TRIAL ON COMPLAINT

Plaintiff, **ROCA LABS, INC.,** hereby demands trial by jury as to all issues so triable as to the Complaint.

Respectfully submitted on this 6th day of November, 2014.

_/s/ John DeGirolamo_

JOHNNY G. DEGIROLAMO, ESQ.

FLORIDA BAR NO: 0089792

_The Law Offices of John DeGirolamo, Esq._

6000 South Florida Avenue,

P.O. Box 7122, Lakeland, FL 33807

_Attorney for Plaintiff, Roca Labs, Inc._

Phone: (863) 603-3461

Email: JohnD@inlawwetrust.com

## VERIFICATION BY DON KARL JURAVIN

BEFORE ME, the undersigned authority, personally appeared Don Juravin, upon being duly sworn, deposes and states:

Under penalties of perjury, I, Don Juravin, am Vice President of Roca Labs, Inc. declare and affirm on this 25 day of October, 2014, under oath, pursuant to § 92.525, Florida Statutes, that I have read the foregoing *Complaint and Motion*, and declare that the facts stated in it are true to the best of my knowledge and belief and irreparable harm and damage will result if the relief is not granted.

FURTHER AFFIANT SAYETH NAUGHT.

Don Karl Juravin

NOTARY PUBLIC, State of Florida

My Commission Expires



ANTONIO GONZALEZ
Notary Public, State of Florida
Commission# EE 185555
My comm. expires Apr. 1, 2016

30

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document has been e-filed via the Florida State E-Portal on this 6th day of November, 2014.


*/s/ John DeGirolamo*

JOHNNY G. DEGIROLAMO, ESQ.