**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **OPINION CORP.,**<br><br>*Plaintiff*,<br><br>*- vs. -*<br><br>**ROCA LABS, INC.** and **ROCA LABS NUTRACEUTICALS USA, INC.**<br><br>*Defendants*. | CIVIL ACTION NO.<br><br>14-cv-6396 (LGS) |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

---

Ronald D. Coleman (RC 3875)
Joel G. MacMull (JM 8239)
Brian Farkas (BF 3418)
**GOETZ FITZPATRICK LLP**
One Penn Plaza – 31st Floor
New York, NY 10119
(212) 695-8100
rcoleman@goetzfitz.com
jmacmull@goetzfitz.com
bfarkas@goetzfitz.com

*Attorneys for Plaintiff Opinion Corp.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ..............................................................................................2

LEGAL ARGUMENT......................................................................................................5

I.     THE AMENDED COMPLAINT ADEQUATELY SETS FORTH A
       FACTUAL PREDICATE FOR THE ASSERTION OF PERSONAL
       JURISDICTION OVER DEFENDANTS UNDER THE  APPLICABLE
       LEGAL STANDARD FOR FED. R. CIV. P. 12................................................5

II.    DEFENDANTS' CONDUCT RENDERS THEM SUBJECT TO THIS
       COURT'S PERSONAL JURISDICTION UNDER NEW YORK'S
       LONG ARM STATUTE......................................................................................6

       A.     The Amended Complaint Alleges that Defendants Have Supplied
              Goods to New York Residents..................................................................7

       B.     The Amended Complaint Alleges that Defendants Transacted
              Business in New York. ...........................................................................10

       C.     The Court's Exercise of Jurisdiction Here Comports with Due
              Process. ...................................................................................................12

III.   THIS COURT HAS SUBJECT MATTER JURISDICTION OVER  THIS
       ACTION UNDER THE DECLARATORY JUDGMENT ACT ......................13

IV.    THE FIRST-TO-FILE RULE APPLIES TO THIS ACTION ..........................16

V.     IN THE ALTERNATIVE, PLAINTIFF REQUESTS LEAVE TO
       CONDUCT JURISDICTIONAL DISCOVERY ..............................................18

CONCLUSION..............................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*,
    860 F. Supp. 128 (S.D.N.Y. 1994) ...................................................................................16, 17

*A.I. Trade Fin., Inc. v. Petra Bank*,
    989 F.2d 76 (2d Cir. 1993)..........................................................................................................7

*Alltrade, Inc. v. Uniweld Products, Inc.*,
    946 F.2d 622 (9th Cir.1991) .....................................................................................................17

*APWU v. Potter*,
    343 F.3d 619 (2d Cir. 2003)................................................................................................18, 19

*Ascentive, LLC v. Opinion Corp.*,
    842 F. Supp. 2d 450 (E.D.N.Y. 2011) .......................................................................................3

*Beacon Enterprises, Inc. v. Menzies*,
    715 F.2d 757 (2d Cir.1983)......................................................................................................12

*Bensusan Rest. Corp. v. King*,
    937 F. Supp. 295 (S.D.N.Y. 1996) .............................................................................................6

*Broadview Chem. Corp. v. Loctite Corp.*,
    417 F.2d 998 (2d Cir. 1969)......................................................................................................15

*Burchette v. Abercrombie & Fitch Stores, Inc.*,
    Case No. 08-cv-8786 (RMB) (THK), 2009 WL 856682 (S.D.N.Y. Mar. 30,
    2009) .........................................................................................................................................19

*Burger King Corp. v. Ridzewicz*,
    471 U.S. 462 (1985)..................................................................................................................13

*Pirone v. MacMillan, Inc.*,
    894 F.2d 579 (2d Cir. 1990)......................................................................................................17

*Cat Tech LLC v. TubeMaster, Inc.*,
    528 F.3d 871 (Fed. Cir. 2008)...................................................................................................14

*Catauro v. Goldome Bank for Sav.*,
    592 N.Y.S.2d 422 (2d Dept. 1993) .............................................................................................9

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)........................................................................................6, 7, 8, 13

*City of New York v. Exxon Corp.*,
932 F.2d 1020 (2nd Cir. 1991)..................................................................................16, 17

*Cleopatra Kohlique Inc. v. New High Glass, Inc.*,
652 F. Supp. 1254 (E.D.N.Y 1987) ........................................................................8

*D.H. Blair & Co., Inc. v. Gottdiener*,
462 F.3d 95 (2d Cir. 2006).......................................................................................16

*Deutsche Bank Sec. Inc. v. Montana Bd. Of Invs.*,
7 N.Y.3d 65 818 N.Y.S.2d 164 (2006) ........................................................................7, 8

*DiStefano v. Carozzi N. Am., Inc.*,
286 F.3d 81 (2d Cir. 2001)...................................................................................5

*Dow Jones & Co., Inc. v. Harrods, Ltd.*,
237 F.Supp.2d 394 (S.D.N.Y. 2002).....................................................................15

*Dow Jones & Co. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003)....................................................................................15

*Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*,
411 F.3d 384 (2d Cir. 2005)............................................................................14, 15

*ECC Corporation v. Slater Electric, Inc.*,
336 F. Supp. 148 (E.D.N.Y. 1971) .......................................................................11

*Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*,
522 F.3d 271 (2d Cir. 2008)................................................................................17, 18

*Factors Etc., Inc. v. Pro Arts, Inc.*,
579 F.2d 215 (2d Cir. 1978)...................................................................................17

*First City Nat. Bank and Trust Co. v. Simmons*,
878 F.2d 76 (2d Cir.1989)......................................................................................17

*Fischbarg v. Doucet*,
38 A.D.3d 270 (1st Dept. 2007).............................................................................9

*George Reiner and Co., Inc. v. Schwartz*,
41 N.Y.2d 648, 394 N.Y.S.2d 844 (1977) ..........................................................11

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
425 F.3d 158 (2d Cir. 2005).....................................................................................6

*Great Northern Ins. Co. v. Constab Polymer-Chemie GmbH & Co.*,
75 Fed. Appx. 824 (2d Cir. 2003) ..........................................................................8

*Int'l Shoe Co v. Washington*,
  326 U.S. 310 (1945)..................................................................................13

*Island Wholesale Wood Supplies, Inc. v. Blanchard Indus., Inc.*,
  101 A.D. 2d 878 476 N.Y.S.2d 192 (2d Dept. 1984) .................................8

*John Wiley & Sons, Inc. v. DRK Photo*,
  Case No. 11-cv-5454 (GBD), 2012 WL 4903250 (S.D.N.Y. Oct. 15, 2012).........................18

*Liquid Carriers Corp. v. American Marine Corp.*,
  375 F.2d 951 (2d Cir. 1967).......................................................................12

*In re Magnetic Audiotape Antitrust Litig.*,
  334 F.3d 204 (2d Cir. 2003)......................................................................5, 6

*Mario Valente Collezioni, Ltd v. Confezioni Semeraro Paolo, S.R.L.*,
  264 F.3d 32 (2d Cir. 2001)..........................................................................8

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)..................................................................................14

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp*,
  84 F.3d 560 (2d Cir. 1996).........................................................................13

*Parke–Bernet Galleries, Inc. v. Franklyn*,
  26 N.Y.2d 13 (1970) ...............................................................................9, 11

*Schnabel v. Ramsey Quantitative Sys., Inc.*,
  322 F. Supp.2d 505 (S.D.N.Y. 2004)...........................................................17

*Sovik v. Healing Network*,
  244 A.D.2d 985, 665 N.Y.S.2d 997 (4th Dept. 1997) ...............................9, 10

*Strategem Dev. Corp. v. Heron Int'l N.V.*,
  153 F.R.D. 535 (S.D.N.Y. 1994) ................................................................19

*U.S. Indus. Chemicals v. Carbide & Carbon Chemicals Corp.*,
  49 F. Supp. 345 (S.D.N.Y. 1943) ...............................................................15

*Vandermark v. City of New York*,
  615 F. Supp. 2d 196 (S.D.N.Y. 2009) *aff'd*, 391 F. App'x 957 (2d Cir. 2010) ........................7

*Wall v. Town Sports Int'l*,
  Case No. 05-cv-3045 (DLC), 2006 WL 226008 (S.D.N.Y. Jan. 31, 2006)...........................7

**Statutes**

17 U.S.C. 512(f).........................................................................................9

28 U.S.C. § 2201(a) ..................................................................................................2, 13, 14, 15

**Other Authorities**

CPLR §302(a)(l) ..................................................................................................................8, 10

Fed. R. Civ. P. 12(b) ..............................................................................................................5, 7

N.Y. C.P.L.R. § 301 ...........................................................................................................6- 8, 10

N.Y. C.P.L.R. § 302 .............................................................................................................6-8

## PRELIMINARY STATEMENT

Defendants Roca Labs, Inc. ("Roca Labs" or "Roca") and Roca Labs Nutraceuticals USA, Inc. ("RLN") (collectively, "defendants") have moved to dismiss plaintiff Opinion Corp.'s ("plaintiff" or "PissedConsumer") Amended Complaint on three grounds. Specifically, defendants argue that: (1) this Court lacks personal jurisdiction over them; (2) subject matter jurisdiction is absent because there is no actual controversy between the parties; and – somewhat inconsistently, to say the least – (3) venue in this District is so inappropriate as to trump the "first-to-file" rule with respect to the lawsuit filed after this one against PissedConsumer in Florida.

Defendants' motion, if granted, would be the first step in their efforts to deprive New Yorkers of the full benefit of plaintiff's website as a forum for reviews of their dubious weight-loss "solution," threatening to strip consumers of the ability to make fully-informed decisions about that product. Their contentions are based on the premise that the Court will simply ignore the facts alleged in the pleadings and be so awed by their technical-sounding nonsense that it will gladly excuse them from litigating in the *bona fide* forum of plaintiff's choice. Defendants refuse to confront the detailed allegations of the Amended Complaint that defendants have spent months threatening PissedConsumer with as part of a campaign to undermine plaintiff's lawful commercial activity, which is based in this District.  And, in doing so, they ask this Court to free them of any accountability for suppressing the free speech rights of other New Yorkers – their many dissatisfied customers, and those who would benefit from reading their complaints.

These are important matters of law and policy. But they would be mere rhetoric for purposes of this motion if not for the fact that the litigation threats of defendants detailed in the Amended Complaint have moved far beyond threats. As they concede, after learning of this lawsuit, defendants simply went ahead and filed their own complaint against plaintiff in Florida

1

state court on August 15, 2014, based on substantially the same grounds as those set out in the original complaint filed in this action three days earlier.[1] (*Compare* Dkt. Nos. 19-3, 19-4, 19-2 *with* 19-5 *and* Exhibit 1.)

Defendants' memorandum of law, as will be shown, not only disregards the "facts on the ground," but relies on inapplicable or outmoded case law. Having thumbed their nose at the Southern District of New York, they now ask this Court to reward them for their efforts, in the process nullifying the Declaratory Judgment Act and the interests of this forum, as manifested in the law of the State and City of New York, to utilize that law to protect the rights of its citizens. Their motion, and their efforts to use the legal system as cudgel to beat public critics into silence, should be dismissed entirely.

### STATEMENT OF FACTS[2]

Defendants sell and market the "Gastric Bypass Alternative," which they describe as a non-surgical weight loss option for obese people. (Am. Compl.[3] ¶ 14.) On August 12, 2014, plaintiff commenced this action against Roca Labs, seeking a declaratory judgment that its publication of consumer reviews about Roca was, despite their serial threats of litigation, lawful in all respects. (Dkt. No. 1.) On September 30, 2014, plaintiff filed an Amended Complaint adding RLN as a defendant as well as two additional causes of action. (*See generally,* Am. Compl.)

---

[1]   Exhibit E (Dkt. No. 19-5) to attorney Shawn Wallach's affirmation in support of defendants' motion to dismiss plaintiff's Amended Complaint inexplicably includes only the first four pages of defendants' **248-count** Florida state court Complaint filed on August 15, 2014. However, for sake of the Court's convenience, defendants' entire second-filed Florida state court Complaint is attached hereto as Exhibit 1.

[2]   All the facts set forth herein are as alleged in the Amended Complaint unless otherwise indicated. To avoid unnecessary repetition, specific factual allegations are set forth in the Legal Argument section below as appropriate for purposes of responding to defendants' claims with respect to the adequacy of those allegations.

[3]   All citations to the Amended Complaint (Dkt. No. 12) appear herein as "Am. Compl. ¶ ___."

As set out fully in the Amended Complaint, plaintiff operates a website that invites consumers to post reviews – good, bad or indifferent – of businesses. (Am. Compl. ¶¶ 11, 35.) *See, e.g.*, *Ascentive, LLC v. Opinion Corp*., 842 F. Supp. 2d 450, 454-55 (E.D.N.Y. 2011) (describing plaintiff's business and denying preliminary injunction by offended review subjects based on putative claims of trademark and other infringement).  PissedConsumer describes itself as a resource that allows consumers to "make better choices" among competing products or services by providing consumers independent views of companies and products. (*Id.* ¶ 10.)  It makes no attempt to discern the probity of the third-party complaints submitted by Internet users. (*Id.* ¶ 13.)  On a given company's web page at the PissedConsumer website, users are provided with a description of the company and its offerings.  (*Id.* ¶ 11.)  Reviews of a company and its products by third parties, who may post anonymously, appear at the bottom of each company's PissedConsumer webpage.  (*Id.*)

The Amended Complaint alleges, among other things, that defendants embarked on a campaign of extortion against plaintiff designed to ruin its business. (*Id.* ¶¶ 30-32, 36-41.) Specifically, in a letter dated August 4, 2014, Roca's "Independent General Counsel" demanded plaintiff remove complaints on PissedConsumer.com relating to Roca Labs' products. (*Id.* ¶ 30; Dkt. No. 19-3.) That letter went on to inform plaintiff that, in its agreements with consumers purchasing its weight loss product, consumers agree to "refrain from negatively reviewing our products" in exchange for "significant discounts off the purchase price." (Dkt. No. 19-3.) Roca's letter further accuses Opinion Corp. of "knowingly and intentionally enable[ing] consumers with whom we maintain a contractual relationship to breach this agreement by providing a public forum to disparage [Roca Labs] and our products… ." (Dkt. No. 19-3.) The letter also made claims for copyright and trademark infringement and tortious interference with contractual

relations, assuring plaintiff that Roca Labs "will take all necessary and appropriate legal action to protect our rights." (Am. Compl. ¶¶ 31-32; Dkt. No. 19-3.)

On August 7, 2014, Roca sent a second letter to PissedConsumer, this time suggesting that Roca Labs had been harmed by plaintiff in the amount of no less than **$40,000,000** by operating a website where Roca's customers could complain about their experiences with its product.  (Am. Compl. ¶ 37; Dkt No. 19-4.) This fantastic figure was apparently generated by merely multiplying the number of "reads" for each review of Roca's product on PissedConsumer.com by $600 – the amount of revenue Roca claimed, baselessly, that **each** reader of **each** review would have, but did not, place with Roca Labs – counting, by implication, anyone who read more than one review as another $600 lost sale regardless of how many reviews that one user perused.  (Am. Compl. ¶ 38; Dkt No. 19-4.) This letter further repeated the claim that PissedConsumer was infringing Roca Labs' copyright content and trademarks. (Am. Compl. ¶ 39; Dkt No. 19-4.)

 Unlike its August 4th predecessor, however, Roca's August 7, 2014 letter included another feature: A parodic rendition of a "settlement offer":  Litigation could be avoided, wrote Roca's counsel, if plaintiff merely (1) vitiated its entire business model by immediately removing all postings about Roca Labs from PissedConsumer.com; (2) further destroyed its credibility and base of consumer confidence by identifying all the anonymous complainants (on the assumption that plaintiff could even do so); and (3) provide funding for Roca "to cover past expenses and future monitoring" in the modest amount of $100,000. (Am. Compl. ¶ 40; Dkt No. 19-4.)

Defendants' bullying conduct directed at plaintiff, a New York corporation doing business in this District, is so over the top that it might obscure the truly obnoxious nugget at its

center:  The free and open admission by defendants that they aggressively enforce their patently unlawful "terms and conditions" prohibiting any negative commentary about their snake-oil weight-loss goop on their own paying customers  –  conditions intended to ensure that negative reviews about this dubious product are never contemplated or, if they are, that they are swiftly and brutishly punished. (*Id.* ¶¶ 19-24.) This conduct, the Amended Complaint alleges, is tantamount to an unconstitutional prior restraint of free speech by customers – and, possibly, victims – including residents of the State of New York, as well as a violation of the consumer protection laws of both New York City and New York State.  (*Id.* ¶¶ 25-29, 110-114.)

On September 10, 2014, despite their repeated, explicit, credible, detailed and explicitly-targeted litigation threat against plaintiff, Roca Labs moved to dismiss plaintiff's initial Complaint for lack of jurisdiction. (Dkt. No. 10.)  They resubmitted the same exact arguments in the form of their present motion to dismiss the subsequent Amended Complaint.  (Dkt. No. 20.)

## LEGAL ARGUMENT

**I.      THE AMENDED COMPLAINT ADEQUATELY SETS FORTH A
         FACTUAL PREDICATE FOR THE ASSERTION OF PERSONAL
         JURISDICTION OVER DEFENDANTS UNDER THE
         APPLICABLE LEGAL STANDARD FOR FED. R. CIV. P. 12.**

The law places a heavy burden on defendants seeking to dismiss a complaint under Fed. R. Civ. P. 12(b).  In the absence of, or prior to, jurisdictional discovery, the Court presumes the truth of the allegations, construes them in their most favorable light, and resolves all doubt in favor of the plaintiff, who need make only a *prima facie* showing of jurisdiction based on his own pleadings and any evidentiary submissions to the court. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). Where, as here, no evidentiary hearing has been held, nor have the parties engaged in jurisdictional discovery, plaintiff need only make a *prima facie* showing on the basis of legally sufficient allegations of jurisdiction. *See In re Magnetic*

*Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). In contrast, a plaintiff's modest burden of establishing the existence of personal jurisdiction is satisfied "even when the moving party makes contrary allegations that place in dispute the factual basis of plaintiff's *prima facie* case." *Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 298 (S.D.N.Y. 1996) (citations omitted). Thus a motion to dismiss on this ground will fail in the face of nothing more than "legally sufficient allegations of jurisdiction." *In re Magnetic Audiotape*, *supra*, 334 F.3d at 206.

Here the Amended Complaint alleges explicitly, in detail and without the slightest hint of denial by defendants that they have engaged in conduct, including the repeated and explicit threat of imminent litigation, directed toward plaintiff; that plaintiff is a corporate citizen of the State of New York and does business in this District; and that this threat was not only credible, it was realized by the filing of the threatened litigation in another forum. As a matter of law, as detailed below, this Court has jurisdiction over these defendants.

## II.  DEFENDANTS' CONDUCT RENDERS THEM SUBJECT TO THIS COURT'S PERSONAL JURISDICTION UNDER NEW YORK'S LONG ARM STATUTE.

Challenges to personal jurisdiction require a court to engage in a two-part analysis. "First, a district court must determine whether, under the laws of the forum state . . .  there is jurisdiction over the defendant. Second, it must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." *Grand River Enters. Six Nations, Ltd. v. Pryor,* 425 F.3d 158, 165 (2d Cir. 2005) (internal quotation and alterations omitted); *accord*, *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163-64 (2d Cir. 2010). Both of these predicates are met here.

Under New York law, there are two bases for personal jurisdiction over out-of-state defendants: (1) general jurisdiction pursuant to N.Y. C.P.L.R. § 301, and (2) long-arm jurisdiction under N.Y. C.P.L.R. § 302. Defendants argue that they can escape this Court's

jurisdiction because the Amended Complaint fails to establish general jurisdiction over them (Defs' MOL at 4), and claim that it sets forth no nexus to the forum beyond defendants' service of two cease and desist letters on plaintiff in New York.[4]  Both of these arguments lack merit. As an initial matter, jurisdiction may arise by virtue of general jurisdiction arising under N.Y. C.P.L.R. § 301 or with New York's long-arm jurisdiction pursuant to N.Y. C.P.L.R. § 302. Here the Amended Complaint more than adequately alleges facts giving rise to personal jurisdiction over defendants under § 302, including by alleging that defendants contracted to supply goods to buyers in New York and, in fact, shipped goods into the state. (Am. Compl. ¶¶ 6-7, 25, 102, 104.)  Jurisdiction over defendants is also proper because defendants' New York activities rise to the level of transacting business within the state. Defendants' arguments concerning general jurisdiction, therefore, are of no moment.

### A.    The Amended Complaint Alleges that Defendants Have Supplied Goods to New York Residents.

Section 302(a)(1) of the N.Y. C.P.L.R. confers jurisdiction over "any non-domiciliary" who "transacts any business within the state or contracts anywhere to supply goods or services in the state, so long as the cause of action arises from that contract."  *See A.I. Trade Fin., Inc. v. Petra Bank*,  989 F.2d 76, 80 (2d Cir. 1993).  A defendant "need not be physically present in New York to transact business within the meaning of the first clause of section 302(a)(1)." *Chloe, supra*, 616 F.3d at 169, citing *Deutsche Bank Sec. Inc. v. Montana Bd. Of Invs.*, 7 N.Y.3d 65, 71 818 N.Y.S.2d 164, 167 (2006). As the New York Court of Appeals explained in *Deutsche*

---

[4]      Defendants' affirmations in support of their motion to dismiss also make these arguments (Dkt. No. 19 ¶¶ 4, 12) but the Court should not consider such submissions on a Fed. R. Civ. P. 12(b)(6) motion. *See Vandermark v. City of New York*, 615 F. Supp. 2d 196, 200 n.13 (S.D.N.Y. 2009) *aff'd*, 391 F. App'x 957 (2d Cir. 2010); *Wall v. Town Sports Int'l*, Case No. 05-cv-3045 (DLC), 2006 WL 226008, *1 (S.D.N.Y. Jan. 31, 2006) ("[I]t is error for a district court to 'consider affidavits and exhibits submitted by [a party] or rel[y] on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.'" (quoting *Friedl v. New York*, 210 F.3d 79, 83-84 (2d Cir. 2000)).

*Bank*, "one transaction," or a "single act," in New York "is sufficient to invoke [long-arm] jurisdiction, even though the defendant never enters New York . . . ." *Id.* at 71 (internal quotation marks omitted).

The Second Circuit has repeatedly confirmed that the "'transacting business' and 'contracting to supply goods' prongs of CPLR §302(a)(l) are analyzed separately and either [one of them] . . . can form a basis for exercise of personal jurisdiction." *Great Northern Ins. Co. v. Constab Polymer-Chemie GmbH & Co.*, 75 Fed. Appx. 824, 826 (2d Cir. 2003). Here, in fact, both "prongs" of CPLR §302(a)(l) have been met, establishing a more than adequate basis for jurisdiction over defendants.

First, the Court has jurisdiction over defendants under the "contracting to supply goods" prong of CPLR §302(a)(l), which provides for jurisdiction when a defendant contracts to deliver goods to the state, even if defendant has otherwise only "minimal contacts" with the state. *See Chloe, supra,* 616 F.3d at 166.  The reason for this is central to the rationale of long-arm jurisdiction:  Shipment of goods into the state is an act by which a non-domiciliary avails itself of the privilege of conducting activities in the state. *See Island Wholesale Wood Supplies, Inc. v. Blanchard Indus., Inc*., 101 A.D. 2d 878, 879 476 N.Y.S.2d 192, 194 (2d Dept. 1984). Thus where there is a formation of a contract to ship goods to New York  and goods actually were shipped under that contract – as alleged here – the establishment of *prima facie* jurisdiction in the state is not a remotely close question. *See* e.g., *Mario Valente Collezioni, Ltd v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 37 (2d Cir. 2001); *Cleopatra Kohlique Inc. v. New High Glass, Inc.*, 652 F. Supp. 1254, 1257-1258 (E.D.N.Y 1987).

The Amended Complaint plaintiff meets this standard by alleging that defendants knowingly and intentionally shipped goods into New York pursuant to purchase orders made by

New York consumers. (Am. Compl. ¶¶ 7, 25, 101-105, 112-113.) Indeed, **defendants concede this fact**, stating in their memorandum of law that "Other than selling its product to New York consumers Roca has no connection to this State." (Defs.' MOL at 5.)   Defendants' argument that "the mere shipping of products into the State alone is not enough to give rise to jurisdiction . . ." (*id.* at 6) is simply inconsistent with longstanding New York precedent, including cases as old as those on which defendants rely.   *See* e.g., *Parke–Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 17 (1970) (jurisdiction found where defendant never entered New York but participated in a live auction taking place in New York by making one telephone call to New York); *Fischbarg v. Doucet*, 38 A.D.3d 270, 272 (1st Dept. 2007) (out-of-state defendants who solicited New York lawyer plaintiff to provide them with legal advice and called, emailed, and faxed the plaintiff in New York in connection with such representation gave rise to jurisdiction even though defendants never entered the state); *Catauro v. Goldome Bank for Sav.*, 592 N.Y.S.2d 422, 422 (2d Dept. 1993) (finding jurisdiction where Missouri defendant called New York bank, "mailed letters to the bank, enclosing the bankbook and the power of attorney," and thereafter received money from the bank).

To the extent defendants rely on the proposition that in other cases, courts have found jurisdiction where the defendants' out-of-state conduct was projected into New York and targeted New Yorkers but also included more, the existence of such decisions does not negate the vast number of cases requiring less.[5]   In *Sovik v. Healing Network*, 244 A.D.2d 985, 665 N.Y.S.2d 997 (4th Dept. 1997), for example, the Appellate Division concluded that one allegedly

---

[5]      As plaintiff previously informed the Court via letter on November 17, 2014 (Dkt. No. 25), defendant Roca Labs has unquestionably engaged in "something more" by virtue of its election to serve a DMCA takedown notice on Google, Inc. in connection with content appearing on  PissedConsumer.com. (*Id.*) As plaintiff's November 17, 2014 letter explains, Roca Labs' conduct here gives rise to an additional cause of action under 17 U.S.C. 512(f) which plaintiff seeks to add to its Amended Complaint by way of an additional amendment.

defamatory letter sent by the defendants could provide a basis for jurisdiction where the defendants had "drafted the letter and either distributed or authorized the distribution of the letter in the Buffalo area," thereby demonstrating the defendants' "active involvement and personal control [in New York] over the writing and distribution of the allegedly defamatory statement." *Id.* at 987.

Here too, contrary to defendants' urging, the Amended Complaint is rich in allegations tying defendants to this forum. In addition to alleging (and defendants confirming by attaching exhibits to their motion (Dkt. Nos. 19-3 and 19-4)) plaintiff's receipt of two separate cease and desist letters in August 2014 (Am. Compl. ¶¶ 30-32, 37-41), plaintiff also alleges defendants have enjoyed substantial sales of their product to New York residents via delivery into the state, which, again, defendants admit. (Am. Compl. ¶¶ 7, 102-105, 110-111; Defs.' MOL at 5.) Therefore, the questionable "solicitation-plus rule" defendants refer to in their memorandum has been met here as well. (Defs.' MOL at 5.) Under black-letter law as typified by the cases cited above, the requirements of Section 302(a)(1) are easily satisfied by the Amended Complaint, and defendants' motion can and should be dismissed on this ground alone.

**B.     The Amended Complaint Alleges that Defendants Transacted Business in New York.**

Jurisdiction over defendants is also proper under the "transacted business" prong of CPLR § 302(a)(1). Defendants transacted business within the meaning of CPLR §302(a)(l) by directing two separate frivolous litigation threats to a New York corporation and attempting to extort $100,000 dollars from plaintiff as the price of desisting from that threat. (Am. Compl. ¶¶ 30-32, 37-41.)  Contrary to defendants' assertions, this alone is more than adequate ground for the assertion of New York's jurisdiction over them.

For example, in *George Reiner and Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844 (1977), the New York Court of Appeals upheld jurisdiction under Section 302(a)(1) based on: (1) defendant's one day trip to New York in response to plaintiff's ad in a Boston newspaper, (2) reaching an agreement with plaintiff to represent plaintiff out-of-state, and (3) defendant's returning out-of-state to work. The Court found that "[t]here can be no question that, by his acts, defendant has purposefully availed himself of the privilege of conducting activities in our jurisdiction, thus invoking the benefits and protection of our laws." *See Schwartz*, 41 N.Y.2d at 653, citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Immediately relevant to the inquiry here, New York courts have found that physical presence is not needed, particularly in light of the evolution of technology. *See*, e.g. *Parke-Bernet Galleries, supra*, 26 N.Y.2d at 15-16. As stated by the court in *ECC Corporation v. Slater Electric, Inc*., 336 F. Supp. 148, 152 (E.D.N.Y. 1971), with respect to § 302(a)(1):

> [I]f the corporate intention is through personnel of executive substance to come to the state to effect a purposeful and important activity on the corporation's part, and by doing so such personnel significantly advance the making of a corporate contract of importance, that activity and presence suffice as a basis for a later exercise of personal jurisdiction by the State of New York over the foreign corporation with respect to matters that can genuinely be said to arise out of the resultant contract... .

In this case, the relevant factors weigh heavily in favor of establishing jurisdiction over defendants:

1. Defendants delivered their initial baseless cease and desist notice to plaintiff, a New York corporation, on or about August 4, 2014 (Am. Compl. ¶¶ 30-32; Dkt. No. 19-3);

2. Following telephonic consultations with plaintiff's counsel concerning that letter, defendants sent plaintiff yet another threatening letter on August 7, 2014 (Am. Compl. ¶¶ 37-40; Dkt. No. 19-4);

3. Defendants continuously supplied goods into New York, and to the same individuals who utilize plaintiff's website (Am. Compl. ¶¶ 7, 25-26, 101-104, 113); and

4. Defendants earned substantial revenues from their sale of product into New York and to the same individuals who utilize plaintiff's website. (*Id.*)

Based on these facts, the instant matter does not involve temporary, random, or tenuous relationships with the forum, as in the decisions relied upon by defendants. *See*, e.g., *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 762–63 (2d Cir.1983) (disparate and unconnected shipments of goods into New York and mailing of a single cease and desist letter to plaintiff in New York insufficient to constitute transacting business). Having established that defendant transacted business in New York, plaintiff needs to show only that its legal claims are sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business and to subject defendants to suit in New York. *See Liquid Carriers Corp. v. American Marine Corp*., 375 F.2d 951, 953 (2d Cir. 1967). In this case, and as the Amended Complaint establishes, there is no serious argument that plaintiff's claims do not arise from the business transacted in New York.

## C.    The Court's Exercise of Jurisdiction Here Comports with Due Process.

Once a defendant is found to be subject to specific or general personal jurisdiction, a court must then consider whether the exercise of jurisdiction will offend the Due Process Clause of the Fourteenth Amendment. As set forth by the Supreme Court, due process requires that defendants "not present within the territory of the forum" have "certain minimum contacts with it

such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). This involves an analysis consisting of two components: the minimum contacts test and the reasonableness inquiry. In this case, defendants, by selling goods into the state, have availed themselves of the privilege of conducting activities within the forum state. *See Chloe*, *supra,* 616 F.3d at 164.

To determine reasonableness, courts must consider: (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief. It must also weigh in its determination; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp*, 84 F.3d 560, 568 (2d Cir. 1996). Every state has a "manifest interest in providing effective means of redress for its residents." *Burger King Corp. v. Ridzewicz*, 471 U.S. 462, 483 (1985). Here plaintiff is a New York corporation, located in New York City. (Am. Compl. ¶ 1.) Given defendants' persistent and intentional contacts with New York, including sales to New York residents, who in turn utilize plaintiff's website which defendants seek the removal of certain content from, and the fact that the injured plaintiff is located in New York, defendants could reasonably expect to be subject to a court's jurisdiction in New York. *See Burger King*, *supra,* 471 U.S. at 483. Accordingly, the exercise of jurisdiction over defendants in this case is manifestly reasonable and comports with Due Process.

## III.   THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION UNDER THE DECLARATORY JUDGMENT ACT

Defendants argue that separate and apart from personal jurisdiction, plaintiff's claim should be dismissed because under the Declaratory Judgment Act, there is no actual case or

controversy here to warrant the Court's assertion of subject matter jurisdiction. (Defs. MOL at 8-9.)  This argument beggars comprehension considering that three days after the commencement of this litigation on August 12, 2014, Roca Labs commenced an almost identical "strike suit" against plaintiff in Florida state court (in which it further sought and failed to secure preliminary relief).[6]

Putting aside the obvious absurdity of Roca's argument that there is no case or controversy where it has actually filed a case against the same party based on the same facts, defendants also misstate the law governing application of the case or controversy doctrine. The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Although there is no bright-line rule for determining whether an action satisfies the case or controversy requirement any "analysis must be calibrated to the particular facts of each case." *Cat Tech LLC v. TubeMaster, Inc.,* 528 F.3d 871, 879 (Fed. Cir. 2008).

The Supreme Court has articulated a basic test that every dispute under this statute must satisfy: A declaratory judgment plaintiff must demonstrate that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007).  As the Second Circuit expressed this formulation in *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.,* 411 F.3d 384 (2d Cir. 2005), "[t]he standard for ripeness in a declaratory judgment action is that there is a substantial

---

[6]    Both Roca Labs' initial Complaint against plaintiff, which was subsequently removed to the United States District Court Middle District of Florida, as well the Report and Recommendation denying Roca Labs' preliminary relief (which was recently adopted in its entirety by the District Court) can be viewed from the docket in the pending litigation in the Middle District of Florida styled as, *Roca Labs, Inc. v. Consumer Opinion Corp., et al*., 14-cv-2096-T-33 (EAJ) (specifically, Dkt. Nos. 2, 43 and 56).

controversy, between parties having adverse interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"). *Id*. at 388 (internal quotation marks and citation omitted). "Accordingly, a touchstone to guide the probe for sufficient immediacy and reality is whether the declaratory relief sought relates to a dispute where the alleged liability has already accrued or the threatened risk occurred, or rather whether the feared legal consequence remains a mere possibility, or even probability of some contingency that may or may not come to pass." *Dow Jones & Co., Inc. v. Harrods, Ltd.,* 237 F.Supp.2d 394, 406–07 (S.D.N.Y. 2002).

A district court's exercise of discretion under the Declaratory Judgment Act is informed by two concerns, namely (1) whether "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) whether "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1000-01 (2d Cir. 1969); *see also Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003). Here, the defendants' letter of August 4, 2014 specifically asserts copyright and trademark rights in content posted on plaintiff's website and further demands its removal. (Am. Compl. ¶¶ 30-31; Dkt. No. 19-3.) Defendants' August 7, 2014 letter reiterates these assertions as well defendants' continued demands for the removal of purportedly infringing content. (Am. Compl. ¶ 39-40; Dkt. No. 19-4.) Plaintiff, in keeping with its policy, did not remove any of the allegedly infringing content. (Am. Compl. ¶ 33.) Courts have held that an actual case and controversy exists for purposes of the Declaratory Judgment Act when parties have a dispute about their respective intellectual property rights.

Indeed, the Southern District has specifically held that when one party, by its conduct, ignores the infringement claims of another party contained in a cease-and-desist letter, that conduct constitutes an actual controversy between them. *See* e.g., *U.S. Indus. Chemicals v.*

*Carbide & Carbon Chemicals Corp.*, 49 F. Supp. 345, 346 (S.D.N.Y. 1943) (where plaintiff ignored cease and desist demand by refusing to answer it and continued to use the process which defendant claimed was protected, it could not be "doubted that there is a 'case or controversy' embraced by the complaint, and that it is in no sense a hypothetical dispute of which the plaintiff complains").

Application of these factors here readily demonstrate that the Court should exercise jurisdiction over this controversy. Resolution of plaintiff's dispute with defendants will resolve in their entirety all of the legal relations at issue and further terminate the controversy giving rise to this proceeding. Therefore, an exercise of jurisdiction by this Court will "terminate and afford relief from the uncertainty . . . giving rise to the proceeding." Moreover, it is abundantly clear from the Amended Complaint as well as from defendants' August 2014 letters to plaintiff that the parties' underlying dispute implicates matters of federal law, namely, alleged trademark and copyright infringement and plaintiff's defenses of fair use. (Am. Compl. ¶¶ 30, 33, 35-36.)

Accordingly, no credible argument can be made on these facts that there exists no actual controversy between the parties as expressed in the Amended Complaint, nor that important public policy implications are not sufficiently implicated here, such that this Court should invoke the doctrine of abstention in refusing to hear this dispute.

## IV.    THE FIRST-TO-FILE RULE APPLIES TO THIS ACTION

The "first-to-file" rule provides that where two courts have concurrent jurisdiction over an action involving the same or similar representative parties and the same issues, the court where the action was "first filed" has priority over the second action. *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006); *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994). It is a rule of judicial economy that creates a "strong presumption in favor of the forum of the first-filed suit." *City of New York v. Exxon*

*Corp.*, 932 F.2d 1020, 1025 (2nd Cir. 1991); *800-Flowers, supra*, 860 F. Supp. at 131-32. The first-to-file rule was developed to "serve the purposes of promoting efficiency and should not be disregarded lightly." *Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622 (9th Cir.1991); *see also First City Nat. Bank and Trust Co. v. Simmons,* 878 F.2d 76, 80 (2d Cir.1989). A party seeking to overcome the first-filed presumption must show that "there are special circumstances which justify giving priority to the second action." *Exxon Corp.*, *supra*, 932 F.2d at 1025. The court where the action was first filed decides the question of whether or not the "first-to-file" rule, or alternatively, an exception to the "first-to-file" rule, applies. *See Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp.2d 505, 510 (S.D.N.Y. 2004).

The Second Circuit has recognized only two exceptions to the first-to-file rule: (1) where the "balance of convenience" favors the second-filed action, and (2) where "special circumstances" warrant giving priority to the second suit.[7] *See Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008). In looking to convince the Court of the existence of special circumstances here, defendants argue that the "anticipatory suit exception" applies. (Defs' MOL at 10-11.) It does not, however, once evaluated against the undisputable facts of record.

One such set of special circumstances may exist where, as defendants appear to argue, the first-filed lawsuit is an improper anticipatory declaratory judgment action. *See* e.g. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978)*, abrogated on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579, 586 (2d Cir. 1990) (holding that the district court properly allowed later-filed suit to proceed because first-filed declaratory judgment suit was triggered by notice letter and was therefore "in apparent anticipation of [the later-filed suit]"). To qualify for

---

[7]     Plaintiff does not seek a stay of the second-filed Florida action, but rather that both actions proceed in parallel.

17

the anticipatory suit bar, however, the first action "must be filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action." *Employers Ins. of Wausau*, *supra*, 522 F.3d at 276. In contrast to the specific criteria articulated in *Employers Ins. of Wausau*, Roca Labs' August 2014 cease and desist letters – while clear and unmistakably threatening in nature – failed to articulate specific deadlines for plaintiff's compliance nor specified the legal action Roca Labs would enlist absent plaintiff's full compliance. (Dkt. Nos. 19-3, 19-4.) "Please be advised that we will take all necessary and appropriate legal action to protect our rights" and "[w]e hope that we can avoid legal action with Opinion and that your client will agree to the above terms" lack the requisite specificity for this narrow exception to apply. *Id.*; *see also John Wiley & Sons, Inc. v. DRK Photo*, Case No. 11-cv-5454 (GBD), 2012 WL 4903250, at *1 (S.D.N.Y. Oct. 15, 2012) (noting the specificity threshold required under *Employers Ins. of Wausau* in applying the anticipatory suit exception).

Because the record does not support a departure from the first-filed rule without a balancing of the conveniences, an argument defendants do not make here, defendants' effort to overcome the first-to-file rule fails.

## V.    IN THE ALTERNATIVE, PLAINTIFF REQUESTS LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY

If, notwithstanding the foregoing, the Court determines that plaintiff is not entitled to file a further amended pleading, or that the proffered allegations do not make a *prima facie* case for personal jurisdiction, plaintiff requests that the Court permit it to conduct jurisdictional discovery to establish a further evidentiary basis for each element required for the exercise of personal jurisdiction over defendants.

Where jurisdictional facts are in dispute, "the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings." *APWU v. Potter,* 343 F.3d

619, 627 (2d Cir. 2003) (internal quotation omitted). The court "should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Id*.; *Burchette v. Abercrombie & Fitch Stores, Inc.*, Case No. 08-cv-8786 (RMB) (THK), 2009 WL 856682, at *5 (S.D.N.Y. Mar. 30, 2009). Even where plaintiffs do not make a *prima facie* showing of personal jurisdiction to withstand a motion to dismiss, the court "has discretion to order further discovery on the jurisdictional issues, provided that plaintiff makes a threshold showing of jurisdiction and establish that their position is not frivolous." *Strategem Dev. Corp. v. Heron Int'l N.V.*, 153 F.R.D. 535, 547 (S.D.N.Y. 1994). Courts in this District have ordered jurisdictional discovery where plaintiffs have "made less than a prima facie showing but made a sufficient start toward establishing personal jurisdiction." *Burchette, supra*, 2009 WL 856682, at *5 (ordering jurisdictional discovery even where "none of [p]laintiff's claims against [defendant] appear to arise out of [the defendant's] alleged contacts with New York"); *Strategem Dev. Corp.*, *supra*, 53 F.R.D. at 547-48.

It is clear from the discussion above that plaintiff has gone far beyond merely demonstrating a "non-frivolous" position and has made a sufficient start with respect to personal jurisdiction. Plaintiff has demonstrated defendants' sufficient and continuous contacts with New York in which defendants have further sought to improperly inhibit the free speech rights of New York citizens by virtue of prohibiting the appearance of certain content on plaintiff's website.

## CONCLUSION

For all the foregoing reasons, as well as those set forth in the accompany affirmations and exhibits submitted by defendants in support of their motion to dismiss the Amended Complaint, defendants' motion should be denied in its entirety.

**Goetz Fitzpatrick LLP**

By:_____
        Ronald D. Coleman (RC 3875)
Joel G. Macmull (JM 8239)
Brian Farkas (BF 3418)
One Penn Plaza – 31st Floor
New York, NY 10119
(212) 695-8100
rcoleman@goetzfitz.com
jmacmull@goetzfitz.com
bfarkas@goetzfitz.com

*Attorneys for Plaintiff Opinion Corp.*

Dated:    November 19, 2014

20